IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### MIDDLE DISTRICT—HARRISBURG 1855.

## Beale *versus* The Commonwealth.

The law does not require that the oath administered to jurors in criminal cases shall be set forth on the record.

When the record in a conviction for rape states that "the jurors were duly impannelled, sworn, or affirmed, respectively, to try the guilt or innocence of the defendant, of the charge whereof he stands indicted," *Held,* that there is nothing on the record that authorizes the inference that an illegal oath was administered, and that the presumption is, that it was administered in legal form.

On a conviction for rape the prisoner was sentenced to imprisonment at *hard* labour: *Held,* that this sentence was erroneous, and the record was ordered to be remitted, that the Court below may substitute for "imprisonment at hard labour," "*separate* or *solitary* confinement at labour," as the law requires.

This Court, on reversal of a judgment in a criminal case for error in the sentence, has power to pass such sentence as the Court below ought to have passed, and to remit the record for further proceedings in conformity to the judgment of this Court.

ERROR to the Court of Oyer and Terminer and Quarter Sessions of *Philadelphia county.*

On the 27th October, 1854, in the Court of Oyer and Terminer for the city and county of Philadelphia, the plaintiff in error was found guilty of a rape upon Narcissa Emmeline Mudge. A new trial was refused 24th November, 1854, and on the 28th November the defendant was sentenced, as stated below. On the 22d March, 1855, he applied to this Court for a writ of error, which was allowed on special cause shown.

(11)

[Beale *v.* The Commonwealth.]

In the trial of the case below the record states that the jury were sworn to "try the guilt or innocence of the defendant of the charge whereof he stands indicted;" and upon his conviction the Court adjudged him to "undergo imprisonment at *hard* labour in the Philadelphia county prison for the term of four years and six calendar months; that he be fed and clothed and otherwise treated as the law directs."

The exceptions taken were, 1st, to the arraignment of the prisoner, which does not appear to have been pressed or considered by the Court.

2d. Because it appears by the record that the jury by whom the plaintiff in error was tried were sworn or affirmed "*to try the guilt or innocence of the defendant,*" instead of *well* and *truly* to try the "issue joined between the Commonwealth of Pennsylvania and the prisoner at the bar, and a true verdict give according to the evidence."

3d. That the sentence was illegal: 1st, because it condemned the defendant to *hard* labour, which the law does not authorize. 2d. Because it did not condemn him to solitary imprisonment at labour, which the law authorized and required if the conviction was legal.

4th. General errors.

*D. P. Brown,* for plaintiff in error, cited *Archbold* 198, 1 *Chitty C. Law* 747, showing the strictness required in criminal proceedings; and then proceeded to consider the exceptions.

1st. An oath cannot be changed or departed from, except by Act of Parliament: 2 *Coke's Inst.* 479; 3 *Inst.* 165; 1 *Bulstrode's Rep.* 198; *Viner's Abr.* "Oath," 48; 17 *Ser. & R.* 193. "The form of a juror's oath prescribed by law solemnly points his conscience to the *evidence* as the only legitimate foundation of his verdict." Its language is, "You do swear that *you will well and truly try the issue joined and true deliverance make,*" &c., "and *a true verdict* give according to the evidence, *so help you God*": 2 *Hale* 293; 1 *Chitty* 551; 5 *T. Rep.* 313; *Cro. C. C.* 8; 1 *Archb.* 162; 4 *Black. C.* 354; *Hargrave S. T.* 723, 724, 737. The words "well," "truly," "try," "issue joined," "true deliverance," "according to the evidence," have each, in this connexion, their special signification; and as the *oath* cannot be changed, it is vital and essential in every part.

2d. The oath administered in the case, to try *the guilt or innocence* of the defendant, was wholly unauthorized; it was not the issue. The jury might not be able to find a man innocent, and yet it may be ought not to find him guilty. The verdict rendered must be guilty or not guilty. But the words, "*a true verdict give according to the evidence,*" are entirely omitted, and this takes the very life and soul out of the oath: 2 *Green's Iowa Rep.* 285,

[Beale *v.* The Commonwealth.]

Harmon *v.* State. As the record stands so must it ever remain, it cannot now be altered: *Co. Litt.* 260; 4 *Rep.* 52; 10 *Yerger* 542; State *v.* Harrison, 1 *Archb.* 186, and note; 2 *Archb. Precedents* 172; 2 *Hawk. C.* 48; 6 *Barr* 385.

3d. The Act 1 July, 1829, requires that "Every person convicted shall be sentenced to undergo imprisonment, and be kept in separate or solitary confinement at labour.". Neither the judgment rendered, nor the record, shows such sentence as the law requires. It must not be simply imprisonment, nor imprisonment at *hard* labour; the Act must be strictly pursued, nor can the sentence be amended: *Archb. Precedents* 172; 2 *Hawk. C.* 48; *Russell & Ryland*, 58; 1 *Maule & Selw.* 442; 10 *Yerger* 544.

The sentence is not the determination of the Court, but an announcement by the Court of the punishment provided by law: 1 *Archb.* 180; *Burn's Justice*, title "Judgment," 16; 1 *Chitty* 701.

If the punishment be greater or less than the limitation fixed by law, it is a nullity. When the law appoints a particular judgment for an offence, the Court cannot alter it: 4 *Mod.* 395; *Shower's Parl. Cases* 129.

Where the Court below has passed an illegal judgment, the higher Court will revise it and refuse to send it back to be amended, and will discharge the prisoner: Rex et Regina *v.* Wolcot, 4 *Mod.* 395; *Shower's Cases* 129; Rex *v.* Ellis, 5 *Barn. & Cress.* 395; and see 1 *Barn. & Cress.* 711; Rex *v.* Bourne *et al.*, 7 *Ad. & Ell.* 58; Silversides *v.* Reg. 2 *Gale & D.* 617. See also Kromer *v.* Commonwealth, 3 *Bin.* 577.

Where defendant was sentenced to three years *hard labour* (and the hard labour was legally no part of the sentence), and had been imprisoned nine months under it, the judgment was reversed and the prisoner discharged: 8 *Barr* 225.

The 21st section of Act of 16th June, 1836, will not allow a modification of the judgment; but supposing it should, it can only be where the error is in the judgment *alone;* but when an erroneous judgment is founded upon erroneous proceedings, the modification of the judgment cannot repair the proceedings, nor the sentence be sustained upon an illegal verdict. It is to the judgment the writ of error issues, and this is to be tested by the record. The sentence cannot be right if the record is wrong, though the judgment may be wrong even if the prior record is right; and neither here nor in England can you restore a defective oath, indictment, or verdict, by modifying the sentence based upon them.

This case in England would be reversed on the second exception, on the ground that no sentence could be pronounced; and there is no case to be found in which the Court below had no legal right to pronounce *any* sentence in which the record has been remitted

[Beale *v.* The Commonwealth.]

or the sentence modified. The counsel compared the English statute of 11 & 12 Vict. c. 78, sect. 5, with our statute of 16 June, 1836; but denied that, under the latter, this Court could disregard the defects excepted to, or that they could affirm, modify, or remit the record; and examined the cases Daniel *v.* Commonwealth, 7 *Barr* 317; Clellans *v.* Commonwealth, 8 *Barr* 223; Dunn *v.* Commonwealth, 6 *Barr* 384; Drew *v.* Commonwealth, 1 *Wh.* 279. In England, where the defendant can enter bail upon appeal after conviction, the available sentence is pronounced in the superior Court, and no punishment is suffered in the mean time; but here there is no bail after conviction, and the sentence goes forthwith into effect. The modification of a sentence in England may work no harm to the defendant; here it would divide the sentence into two branches; under the *first* he is imprisoned, say half the time, at hard labour; under the second, the *other half*, to solitary confinement. Will this Court sustain such an anomaly?

*W. B. Reed,* District Attorney, and *W. B. Mann,* for the Commonwealth.—The form of the record in this case was specially directed by Judge King, holding an Oyer and Terminer in 1848, and since that time has been the invariable form in the county of Philadelphia. There are no less than fifteen convicts of homicide alone, not to speak of other crimes, now in the penitentiary, the records of whose convictions are precisely as this is. The entry in this case is that the jurors "were *duly* impannelled, *sworn,* or *affirmed,* to try the guilt or innocence of the defendant, of *the charge whereof he stands indicted.*" The record is never meant to show the precise form in words of the oath administered, and does not comprise a direct reference to the evidence, that being implied; and there is no substantial variance between the record and the oath administered. The mere omission of the words "according to the evidence," would not be error. It is sanctioned by the general practice of the state (and the counsel named some thirty counties in which this was the practice), and the only precedent in which the words are inserted in Pennsylvania, is to be found in the case of Commonwealth *v.* Harris Bell, in Wayne county, tried for murder in 1847; and cited several cases exhibiting peculiarities in the record as to the mode of swearing, but all omitting the words "according to the evidence." In neither of these cases had there been any revision of the records, and this was attempted in but one of them. If a witness is said to be *sworn,* he is presumed to be sworn according to law: 10 *Harris* 353; and see Jewell's Case, 10 *Harris* 98, and 6 *Bin.* 804. In Hamilton *v.* The Commonwealth, 4 *Harris* 129, the record of the oath was in the words, "who upon their oaths and affirmations respectively do say," without other words; yet no allusion was made in the errors assigned as to the

[Beale *v.* The Commonwealth.]

swearing of the jury, and the judgment was reversed on entirely different grounds.

There is no form of oath for jurors in criminal cases prescribed by statute in Pennsylvania.

In Haneman *v.* The State, 2 *Green's Iowa Rep.* 285, where a common law form was used, it was held erroneous, because the *statute* prescribed a different form.

The recitals of the record never correspond to the forms in the books. See 4 *Blackstone's Appendix, Crown Circuit Companion,* pp. 91, 92, in which they differ as widely as in this case—in one (*Ib.* 87), almost identical. And see The State *v.* Christmas, 4 *Dev. & Battle,* 410.

The Court always presumes that the proceedings as shown by the record of a Court of supreme original jurisdiction, as regards form and manner, are correct: State *v.* Vienkaugh, 2 *Hawks.* 431; State *v.* Leaborn, 4 *Dev.* 305. It is enough that the record be certain to a certain intent *in general.* It is not necessary that it be certain to a certain intent in *particular.* A substantial error must be shown, to reverse a judgment in a criminal case.

But a trial on the merits, on a plea voluntarily pleaded, and his taking the chance of a verdict in his favour, conclude the prisoner: Commonwealth *v.* Immell, 6 *Bin.* 404; *Greene* 285; 9 *Mass.* 107. In our Courts but one rule has prevailed, the *spirit* of the Act of 1814, and the decision in the Commonwealth *v.* Immell, being carried out, though in terms the Act applies only to "drawing, summoning, or returning any juror or panel of jurors:" Commonwealth *v.* Richard Smith, in 1816, 2 *Ser. & R.* 301. Where the prisoner took no exception, but went on to trial on the plea of not guilty, the Act was held to cure all defects alleged as error in the case; and so Commonwealth *v.* Chauncy, 2 *Ashmead* 103; Commonwealth *v.* Dyott, 5 *Whar.* 67; Burton *v.* Ehrlich, 3 *Harris* 236; Commonwealth *v.* Flanagan, 7 *W. & S.* 422.

3d. If a clerical or even judicial error were apparent in the sentence, the duty of this Court is to modify and correct it: Commonwealth *v.* Drew, 1 *Whar.* 280; Cullins *v.* Commonwealth, 8 *Barr* 223; Daniels *v.* Commonwealth, 7 *Barr* 317; Miles *v.* Commonwealth, 1 *Harris* 635; Jewell *v.* Commonwealth, 10 *Harris* 101.

See additional authorities as to the form of the oath administered to the jury as exhibited in the records: 4 *Black. Com.* 111, "Murder;" *Crown Circuit Companion,* pp. 91, 92, conviction for keeping a disorderly house; *Stubb's Crown Circuit Companion,* 87, "Robbery."

*D. P. Brown,* in reply.—That "writs of error should not be allowed merely for the sake of reversing a judgment, when the merits have been fairly tried," is plain; but how are we to know

that the merits have been fairly, that is, *legally*, tried, but by recourse to the record to ascertain the legality of the proceedings?

How does it appear that the form of this record was specially directed by Judge KING in 1848? or what if it did so appear? or that there are fifteen cases of homicide in the penitentiary, the records of which are precisely like it? If it did appear, one error cannot be justified by showing fifteen others.

The record shows a different issue and a different oath from those known to the law; and if not required to show the precise form of the oath, it must *not* show, that in form and in substance too, it was wrong; and the record of a case essentially wrong cannot be cured by implication or intendment.

There is in this case an exclusion of the evidence and a creation of an issue never joined.

If it *did* appear that the words, "according to the evidence," had been omitted in several cases, it would not affect the question. The question may not have been made; and they *are* found in the record of the Commonwealth *v.* Harris Bell, tried in 1847.

No record which presents the issue of "guilty or innocent," can be found anywhere, and therein is a substantial difference from the issue required by law. It matters not whether the oath be prescribed by common law or by statute. If by statute, its directions must be pursued; if no statute, the common law must be our guide: 2 *Green's Iowa Rep.* 285.

But it is said that "if the jury were sworn in the words of the record, a trial on the merits, voluntary plea, and taking the chance of a verdict, conclude the prisoner."

If this were the law it would give validity to a worthless indictment, to lynch law, to anything most foreign and adverse to the principles of humanity and justice; and a defendant, put upon his trial—it matters not how—never can revise or reverse the judgment.

Defective indictments are not cured by verdict: 4 *Black. Com.* 375. The Act of 1814 does not make a trial on the merits a waiver of all errors like this; it actually excludes this conclusion, and by pointing out what shall be considered waived, implies more clearly what shall not be waived.

The Act directs that "the trial shall be a waiver of all errors and defects appertaining to the said precept, *venire*, drawing, summoning, and returning of jurors." No exception is taken to any matter cured by the Act.

The cases cited by the District Attorney are decisions upon questions, the waiver of which are authorized by the statute, and have no application to those here excepted to.

The following opinions were delivered.

WOODWARD, J.—This writ of error was allowed for the purpose

[Beale *v.* The Commonwealth.]

of raising but two questions, the first of which is, Does it sufficiently appear from the record that the jury were duly sworn or affirmed?

We have no statute that prescribes the form of the juror's oath in criminal cases; but in capital cases, and in cases that ever were capital in Pennsylvania, we have retained the common law form of oath, which is as follows: "*You do swear that you will well and truly try, and true deliverance make between the Commonwealth and the prisoner at the bar whom you shall have in charge, and a true verdict give according to the evidence: so help you God.*" This is the oath that ought to have been administered here, for the offence charged was rape, and anciently it was punishable with death, both in England and Pennsylvania. Were we free to resort to presumptions and to evidence *dehors* the record, it is most likely the fact could be established beyond controversy that the jury were sworn in the very words of the above oath; but sitting as a Court of review we can know nothing of the facts that transpired at the trial except what we learn from the record, and therefore the question now to be decided is not the general one, whether that oath was in point of fact administered, but the more special one whether the record proves that it was.

The record informs us that on the 24th of October, 1854, the defendant being present in Court and having been arraigned and pleaded not guilty, a jury was called, examined by the Court and chosen by the defendant, and (after naming them) are duly impannelled, sworn, or affirmed, respectively to try the guilt or innocence of the defendant of the charge whereof he stands indicted, and are placed in charge of the Court's officers."

This is a succinct narrative of what was done, without professing to detail the formularies. We are not told how the defendant was arraigned, how the jury were examined, nor how they were sworn. The general purpose or object of calling and swearing them is described—to try the guilt or innocence of the defendant—and truly described; for the very question submitted to the jury was, Is the defendant guilty or not guilty of the charge whereof he stands indicted? but the oath is not set out, either in form or substance. Nor is it usual to set forth the oath of the jurors in criminal records. The precedents, both English and American, have been examined in vain for an instance. I suppose the form of record which is found in the Appendix to the 4th volume of Blackstone is as high evidence of the law of records in criminal cases as any precedent that can be found; and that does not set forth the oath administered to the jurors, but says, in the same historical manner of this record, that they were "*sworn to speak the truth of and concerning the premises.*" So in the cases cited by counsel from thirty-six different counties in our own state, the records do not, in a single instance, set forth the oath as administered, and

they exhibit considerable diversity in the mode of announcing the
fact that an oath was administered. In most of them the entry is
simply, Sworn or affirmed; in one the English form is followed—
" sworn to speak the truth of and concerning the premises ;" in
another, " sworn to try the issue aforesaid ;" in another, " well
and truly to try, and true deliverance make between the Common-
wealth and the prisoner at the bar ;" but none of them detail the
oath, nor even allege that the jury were *duly* sworn.   These diver-
sities relate not to the body of the oath—that has been uniformly
the same—but to the mode of docketing the fact that an oath was
administered. And such a number of cases occurring in every part
of the state, and under the eyes of a great variety of learned judges
and counsel, are high evidence of the law. The uniformity with
which the records show that the jury were sworn proves that we
are to look to them for that fact, whilst the diversity of phrase in
which they announce the fact, proves that we are not to look to
them for the form of the oath.

How then are we to get at the form of the oath as actually ad-
ministered? By taking the form prescribed by the common law,
and applying the maxims that belong to judicial records—that all
things are presumed to be rightly done where the contrary doth
not appear—and that judicial records are to be received for
verity.

Because the law enjoined an oath in the form I have stated,
and because the record says the jury were sworn, we are bound to
presume they were sworn in that form.   True, this presumption
might be rebutted by something contained in the record; but in
the case before us it is not, because the words found there do not
profess to describe the oath, but the fact and purpose of the swear-
ing.   And this presumption, negatived by nothing on the record,
is aided, strengthened, and confirmed by the word " duly."   That
adverb qualifies the act of administering the oath to the jury—
they were *duly* sworn.   When a party is duly sworn he is sworn
according to law: Edge *v.* The Commonwealth, 7 *Barr* 277;
Clarke *v.* Benford, 10 *Harris* 355.   If this record imports abso-
lute verity, it tells us that the jury were sworn in the forms of the
law, because *duly* sworn, and against that no allegation whatever
can be admitted.

Thus we are brought by an inspection of the record and the
application of the appropriate legal maxims, to the conclusion,
that the oath actually administered was the very oath the law fur-
nished for the occasion.

We are not to expect too much from records of judicial pro-
ceedings.   They are memorials of the judgments and decrees of
the judges, and contain a general but not a particular detail of
all that occurs before them.   If we should insist upon finding
every fact fully recorded which must occur before a citizen can be

[Beale v. The Commonwealth.]

punished for an offence against the laws, we should destroy public justice, and give unbridled license to crime. Much must be left to intendment and presumption, for it is often less difficult to do things correctly than to describe them correctly. This record is unusually full,—its fullness indeed is the source of the objections urged against it,—and yet it does not tell us how the defendant was tried, whether in the course of common law trials by jury, or in some of the various other modes that have been known in the world. Is the judgment to be reversed for that reason? By no means. We intend that the trial was by jury and by witnesses confronting the accused, because the record certifies us of a trial; and we know that a jury and witnesses are indispensable to a constitutional and legal trial. In the same manner we infer the presence of the jury throughout the trial, though the record takes no notice of them from the 24th to the 27th of October; and that the testimony was delivered *ore tenus*, though the names of the witnesses in the margin is all that is said about witnesses.

These legal intendments are made in favour of Courts of particular and inferior jurisdiction. When such a Court assumes to proceed it must set forth such facts as show that it has jurisdiction, but it need not set forth all the facts out of which its jurisdiction arises. If it appear anywhere upon the face of the proceedings that the inferior Court has jurisdiction, it will be intended that the proceedings are regular.

But here we have to deal with the record not of a Court of inferior and limited jurisdiction, but of one of the constitutional tribunals of the Commonwealth—a Court of large common law powers, and of general criminal jurisdiction; and surely the presumptions in favour of such a record are not to be less conclusive than those which apply to the records of inferior Courts.

These views result necessarily in overruling the error assigned in regard to the oath of the jurors; and it is well for public justice that they do, for if we should reverse this judgment on the ground assumed, we should throw open prison doors to a large number of culprits now suffering the just penalties of the law under records equally defective. It is stated by the district attorney, and the fact is unquestioned, that there are now in the penitentiary, serving out their sentences, no less than fifteen convicts of homicide alone, not to speak of other aggravated crimes, the records of which are precisely like this. A review of all the prisons of the state would doubtless exhibit a vast amount of penal justice that would be arrested and cancelled at once if this judgment should be reversed. We are called on virtually to make a general jail delivery—to decide that the criminal records of the state from the beginning have been defective, and that the many felons who have paid the forfeit of their crimes on the gallows have been put to death contrary to law. Serious as these consequences are, they

are not, I agree, sufficient ground for withholding from this defendant our judgment of reversal if he were entitled to it under the law of the land. Justice, according to law, is to be done, though the heavens fall. But these numerous convictions on similar records are expressive indications of the measure of exactness required in criminal records; precedents which we are not only justified in following, but which we have no right to disregard to the detriment of the community. A prudent judge will always look to consequences before he subverts a long-established practice, or gives his sanction to a new rule of criminal law. In my opinion there is no occasion for innovation here. It would be neither wise, nor just, nor safe.

The only remaining error has reference to the sentence. The 11th section of the Act of 8th April, 1842, relating to the Philadelphia county prison, upon which the sentence was founded, provides for "imprisonment by separate or solitary confinement at labour," but the defendant was simply sentenced to undergo "hard labour in the Philadelphia county prison" for four years and a half. This is a departure from the statutory rule, not so much in the use of the word *hard*, for that perhaps is implied by the statute, as in omitting the qualification of separate or solitary confinement, which was a new system in Peunsylvania, and which must be strictly followed where it is plainly enjoined. It has its advantages to the prisoner himself, and where he claims them he is entitled to them. The sentence, therefore, must be reversed. It cannot be amended. It might have been during the term, but not afterward.

LEWIS, C. J.—In a criminal case we have no power to review the decisions of the Court below, in admitting or rejecting evidence, or in charging the jury. Nor can we reverse for errors of the jury, however gross. If the forms of the law have been observed, and the proceedings, as stated on the record, are legal, we have no more power to relieve the defendant from an unjust verdict against or without evidence, than "any other five citizens of the state:" Jewell *v.* The Commonwealth, 10 *Harris* 99. We may, in such cases, feel it our duty, *as citizens*, to perform the common obligations of humanity, by presenting our views to that department of the government which alone can grant relief. But, *as judges of the Court of review*, we must confine ourselves to the record; and, as already intimated, neither the evidence nor the instructions submitted to the jury form any part of it.

Among the errors assigned, there are but two which deserve consideration. One has relation to the oath administered to the jury; the other to the sentence pronounced by the Court. The first is of some importance to the prisoner, because, if sustained, he will be entitled to a new trial. The law requires that the jurors, in a criminal case, shall be sworn or affirmed that they will

[Beale *v.* The Commonwealth.]

" well and truly try, and true deliverance make between the Com-monwealth and the prisoner at the bar, whom they shall have in their charge, and a true verdict give according to the evidence :" 1 *Chit. Crim. Law* 552. But the law does not require that this oath shall be set forth on the record. On the contrary, when a record is made up in the ancient and approved form, it is sufficient, if it state that the jury were sworn to "speak the truth of and concerning the premises :" 4 *Blackstone's Com. App.* 332; or " of and upon the premises :" *Crown Circuit Companion* 87, 91, 92. In the case before us, the record states that the jury were " *duly* impannelled, sworn or affirmed respectively, to try the guilt or innocence of the defendant of the charge whereof he stands in-dicted." Is there any substantial difference between this entry and that which has been sanctioned by authority and immemorial usage? When the record informs us that the jury have been sworn to "speak the truth of and concerning the premises," we are bound to understand that the oath prescribed by law has been properly administered to them. Why are we not bound to under-stand the same thing from the entry made in this case? We are informed by the record that the jury were " *duly*" sworn to try the guilt or innocence of the defendant." How could they be " *duly*" sworn in any other way than in the form prescribed by law? The word " duly" means " properly," " fitly," " regularly," " in a suitable or becoming manner." But to administer an oath to a jury, which was contrary to that prescribed by law, could not have been *proper, fit, regular,* or *becoming.* A substantial depar-ture from the oath prescribed would have been very *improper* and grossly *irregular.* Such an oath could not, in any true sense, be said to have been duly administered and taken. It is true that we might, by a nice construction, understand this record to mean that an illegal and void oath was administered to the jury with all the proper formalities required by law. But would this be a fair construction of the entry? We think not. A void and unlawful oath cannot be duly or regularly, or properly administered. After careful consideration, we construe the entry to mean that the jury were sworn in the manner prescribed by law; and that they were required by their oaths to "try the guilt or innocence of the de-fendant" properly and regularly according to law. The entry before us as plainly means this as does the ancient one which has been sanctioned by usage and precedent. Our constitution gives the people the right of electing the clerks of the several Courts of original jurisdiction, and of bestowing these offices from time to time upon inexperienced men. If the records made up by these public servants are not construed with great liberality, justice cannot be administered. On the whole, we are of opinion that there is nothing on the record which authorizes us to infer that an

[Beale *v.* The Commonwealth.]

illegal oath was administered to the jury. The presumption from the entry is the other way.

But the sentence is clearly erroneous. It imposes "*hard*" labour without statutory authority, and omits to require that the imprisonment shall be "solitary," in disregard of the positive directions of the Act of Assembly. We are bound to presume that every convict has a deep interest in his own reformation. He has, therefore, a right to all the means, provided by law, to produce that desirable result. Social intercourse has its pleasures and advantages ; but there is a personal discomfort, as well as a moral injury, to every prisoner who is condemned to indiscriminate intercourse with convicts of every shade of guilt. The plaintiff in error has a right to have these errors in the sentence corrected. The record will therefore be remitted, in order that the Court below may substitute for "imprisonment at *hard* labour," "*separate* or *solitary* confinement at labour," as the law requires.

The doubts which formerly existed respecting the power of the Supreme Court, upon reversing a judgment in a criminal case, are entirely dissipated. We have authorities to show that the Supreme Court, on reversal of a judgment in a criminal case for error in the sentence, has power to pass such sentence as the Court below ought to have passed : Drew *v.* The Commonwealth, 1 *Wharton* 281 ; Daniels *v.* The Commonwealth, 7 *Barr* 375 ; Commonwealth *v.* Ellis, 11 *Mass.* 465 ; Kane *v.* The People, 8 *Wend.* 211. It has also the power to award a *procedendo* in a criminal case : Rex *v.* Kenworthy, 1 *B. & C.* 711 ; and it may, in its discretion, remit the record with orders to proceed on the indictment after the reversal of an erroneous judgment : Commonwealth *v.* M'Kisson, 8 *Ser. & R.* 422 ; Commonwealth *v.* Church, 1 *Barr* 110. The Act of 16th June, 1836, conferred no new powers in this respect. It was designed to remove doubts which had arisen in consequence of conflicting decisions. The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine, that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether, because the Court committed an error in passing the sentence. If this Court sanctioned such a rule, it would fail to perform the chief duty for which it was established. Our duty is to correct errors, and to "minister justice." But such a course would perpetuate error, and produce the most intolerable injustice.

It is considered that the judgment of the Court of Oyer and Terminer, for the city and county of Philadelphia, in this case, be reversed and annulled. And it is ordered that the record be remitted to said Court, for further proceedings in conformity with the opinion of this Court herein expressed.