## Chambers, Appellant, *v.* Mesta Machine Company.

*Negligence—Master and servant—Fellow servant rule—Expert testimony—Case for jury.*

1. Where facts are of a character that render them susceptible of full and adequate development so that their bearing upon the issues involved can reasonably be estimated by a jury, expert

testimony or testimony in the nature thereof is not essential, and therefore not admissible.

2. In a negligence case evidence of customary methods pursued in like establishments may be offered by a defendant to disprove negligence, but such evidence is only admissible to prove the plaintiff's case, when it tends to show that the customary method pursued in defendant's establishment was not only unusual but more dangerous in itself than the ordinary one.

3. In an action against a machine company to recover damages for personal injuries sustained by an employee, the case was for the jury and judgment for the defendant n. o. v. was erroneously entered where it appeared that plaintiff was injured in defendant's shop by the fall of a casting from a crane, that the casting had been improperly attached to the crane, not by the person usually charged with that duty, but by a machinist who was engaged in employment similar to plaintiff's, and there was evidence from which it could be inferred that the machinist had been directed by the foreman to attach castings when the regular "hookers-on" were not at hand, and that he was not experienced in such work and had not been instructed therein.

*Practice, C. P.—Motion for judgment n. o. v.—Motion for new trial.*

4. Where motions for judgment non obstante veredicto and for a new trial are pending the proper practice is to dispose of the motion for a new trial before entering judgment on the motion for judgment non obstante veredicto.

Argued Oct. 18, 1915.  Appeal, No. 180, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1913, No. 841, for defendant n. o. v., in case of Thomas Chambers v. The Mesta Machine Company, a Corporation.  Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.  Reversed.

Trespass to recover damages for personal injuries. Before MILLER, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,500.00 and judgment thereon. The court subsequently entered judgment for defendant n. o. v.

Assignment of Errors—Opinion of the Court. [251 Pa.

*Error assigned,* among others, was the judgment of the court.

*Arthur E. Young,* for appellant.

*W. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1916:

The plaintiff, a machinist in the defendant's mill, was injured on February 22, 1911, through the fall of a heavy casting from an electric crane. He sued in trespass, charging negligence, and recovered a verdict; but the court below entered judgment non obstante veredicto for the defendant. The plaintiff has appealed.

There is no dispute on the facts. The mill in question had a center aisle, 840 feet long, over which five electric cranes operated; on either side were machines to which castings were brought to be worked upon by mechanics such as the plaintiff; after these mechanics had finished their work, it was the duty of "hookers-on," or chain-men, regularly employed for that purpose, to attach the castings to the cranes, which lifted and carried them down the aisle, over the heads of many workmen. One McFall, who was not a chain-man, on several prior occasions had been instructed by his foreman to "hook on" castings when the services of the men whose duty it was to do that work could not be procured. On the day of the accident McFall was working on a casting which weighed three-quarters of a ton and was four or five feet in diameter, shaped much like an ordinary lid or cover with a large knob in the center; this casting had numerous holes bored through its surface around the rim, or circumference, and through the center knob. When his work was finished, he called the regular "hookers-on" to fasten the casting to a crane, but, after waiting a half hour, when they failed to come, he did the

"hooking on" himself; he did this by dropping bolts through two holes in opposite sides of the casting, the heads of the bolts preventing them from falling through and their ends extending below the under surface of the rim; then, by the use of these bolts, he attached chains to the casting and carried them up in the form of an inverted "V" to the hook on the lifting device of the crane. Thus secured, the casting was raised about 15 feet and moved over the heads of those in the aisle beneath; but, when the crane had traveled a short distance, the casting lost its equilibrium, toppled over and fell, injuring the plaintiff.

Judgment non obstante veredicto was granted on the theory that, inasmuch as the casting which caused the injury was larger than those McFall previously had been told to "hook on," he, at the time of the accident, acted without authority and beyond the scope of his employment; hence, there could be no recovery by the plaintiff. The defendant contended in the court below, "all that was needed safely to hook the casting on the crane was to slip a bolt through the collar, (or knob), at either side, slip the chains under the projecting bolt, and have the crane man 'hoist away'"; it insisted there, and it now argues here, that, to perform the work otherwise was such a clear act of carelessness on the part of McFall, a fellow-workman, it should be declared negligence as a matter of law, and that, on this theory, it was entitled to judgment in its favor.

We cannot concur in the view of the case taken by the learned court below, nor can we sustain the contention of the defendant. McFall testified he had been told on several occasions by his foreman that, "in the absence of chainmen" or "regular hookers-on," he should fasten his castings to the cranes himself, and that, before the accident, this course was pursued quite frequently by him and others in his position, "when the 'hookers-on' did not come as soon as we thought they ought to." It is true, McFall, on cross-examination, in answer to lead-

ing questions, said the castings he referred to were "small," and that never prior to the accident had he attempted to hook on a casting as large as the one that injured the plaintiff; but there was no evidence to show the difference in size or weight between the casting which caused the injury and the others referred to by the witness, or to indicate that the former was more difficult to "hook on" than the latter, or that, when inadequately fastened, a small casting created any less danger than a larger one. On the evidence presented, it was for the jurors, and not for the court, to say whether McFall's orders to "hook-on" castings when the regular men employed 'for that purpose were not at hand, had been exceeded in this instance; that is, it was for them to determine whether he was acting as a mere volunteer or within the scope of his employment at the time of the accident. Moreover, if, owing to the orders received from his superior, the jurors believed McFall was acting within the scope of his employment, then, since he was not an experienced man in "hooking on" castings, and had not been instructed, it was for them to decide whether or not experience or instructions were necessary to do such work with a reasonable degree of safety to others; for, if experience or instructions were essential to that end, the defendant would be liable, provided this want of experience or instructions was a proximate cause of the accident. Although, by express agreement of counsel on both sides, the model used at the trial was exhibited to us, with an illustration of the manner in which McFall attempted to do the "hooking on," yet, it was not thereby made self-evident, and a reading of the testimony has not convinced us, that the court below properly could declare, as a matter of law, the correct method of fastening castings to cranes; or that this was so obvious and simple it required no special experience or instructions to enable one to perform the work with safety to others; we think the question whether the injury to the plaintiff

was caused by carelessness on the part of McFall or by the negligence of the defendant, in failing to instruct him how safely to "hook" castings to the cranes, was for the jury to decide. In short, all the issues which we have indicated raised questions for the triers of the facts to determine, under appropriate instructions from the court concerning the effect of their findings, and none of these questions could properly be ruled as a matter of law.

The second, third and fourth specifications of error complain of the refusal of evidence offered by the plaintiff; and, since this case may be tried again, it seems well briefly to discuss the subjects brought before us by these assignments. The evidence refused was, (1) proof in the nature of expert testimony, (2) proof of methods pursued in other mills. The facts at bar were of a character that rendered them susceptible of full and adequate development before a court, so that their bearing upon the issues involved could reasonably be estimated by the jury; hence expert testimony, or testimony in the nature thereof, was not essential, and therefore, not admissible: Ake v. Pittsburgh, 238 Pa. 371, 375; Graham v. Penna. Co., 139 Pa. 149, 159. Evidence of customary methods pursued in other like establishments may be offered by a defendant to disprove negligence, but, as a rule, such evidence is not admissible to make out a plaintiff's case. This character of proof is only admissible on behalf of an injured plaintiff in exceptional instances when it tends to show that the customary method pursued in his employer's establishment was "not only unusual, but more dangerous in itself than the ordinary one": Cunningham v. Ft. Pitt Bridge Works, 197 Pa. 625; Stewart v. Central R. R. Co. of N. J., 235 Pa. 311, 319; McFadden v. Philadelphia, 248 Pa. 83, 89. While, owing to the prior directions given by the defendant's foreman to McFall, the testimony in the present case was sufficient to make it a question for the jury whether he acted with au-

thority in fastening this particular casting to the crane, yet, the proofs were not adequate to show the pursuit in the defendant's mill of an unusually dangerous customary method of doing this work, within the meaning of the rule upon that subject as laid down in our cases.

We observe a growing tendency on the part of plaintiffs to rely upon opinion testimony or the production of other evidence than proof of the facts actually involved in the case on trial. Here, as already indicated, counsel for plaintiff attempted this course; although he now admits: "Such evidence as was offered and refused seems to have been entirely unnecessary to make out plaintiff's case." Evidence of the character we are discussing should not be resorted to when "entirely unnecessary" to make out a case. Expert testimony is only admissible on the ground of necessity, and the other class of proof tendered by the plaintiff should never be received unless fairly within the rule in relation thereto; this should be constantly kept in mind by both court and counsel.

In Walters v. American Bridge Co., 234 Pa. 7, 11, we ruled that it was proper practice when motions for judgment non obstante veredicto and for a new trial were pending, to dispose of the latter before entering judgment on the former. Here, however, it appears that the motion for a new trial is still open; had we noticed this fact at argument, we should have sent the record back to the court below to have that motion disposed of; but, under the peculiar circumstances at bar, we shall now enter the following order:

The first assignment, which complains of the entry of judgment non obstante veredicto in favor of the defendant, is sustained; the record is remitted to the court below, with directions to dispose of the motion for a new trial as right and justice under the law may require, and, if a new trial is refused, then to enter judgment on the verdict for plaintiff.