## Commonwealth *v.* Rouchie et al., Appellants.

596

Argued May 4, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*F. Joseph Thomas,* with him *Kenneth W. Rice,* for appellants.

*Albert L. Thomas,* of *Thomas & Kiebort,* with him *Herbert A. Mook,* District Attorney, for appellee.

OPINION BY PARKER, J., June 26, 1939:

Floyd Rouchie, Robert Gilmore, Lionel Reinhardt and Gordon Bell were jointly charged, indicted and convicted of assault and battery and aggravated assault and battery upon the body of one Charles C. Farrah.

They were each sentenced for aggravated assault and battery and each has appealed to this court. They were tried together by one jury, the appeals were argued at one time and we will dispose of the appeals in one opinion. We are all of the opinion that there was ample evidence to support the verdict and that the defendants had a fair trial.

The appellants rely for a reversal on the refusal of the trial judge to grant a continuance of the case to a succeeding session of the court, on trial errors in the receipt and rejection of testimony and in the charge of the court and on the terms of the sentence.

A general statement at this time of the essential facts will avoid later repetition and aid in an understanding of the various legal questions raised. We learn from the defendants, for each took the stand, that in the early evening of December 16, 1938, all four of them met in Meadville and travelled about together, visiting various saloons, for the purpose of gathering men for picketing and "button inspection" at the plant of the Viscose Company on the following morning. All but Gilmore were members of the C. I. O. and Gilmore had been a member, but it was claimed that he was at the time in arrears in payment of his dues; two of them were or had been officers in that organization. All four had come to the Green Hedge Tavern about 11 p. m., where at least three of them had been drinking. They were still there when Charles C. Farrah came into the tavern between midnight and 1 a. m. Farrah was not a member of the C. I. O.

The Commonwealth showed that when Farrah came in Gilmore said to Rouchie and Reinhardt: "There is that scab" and told Rouchie to go pick a fight with him; that Rouchie then went up to the bar and said to the bar tender: "You shouldn't sell that rat or scab anything" and then said to Farrah: "You are a yellow rat or scabby rat," after which statement Rouchie struck Farrah. Gilmore also struck Farrah. A fight ensued

and Farrah was led into the kitchen by the proprietor of the inn to get him out of danger. The proprietor then cleared the place of those drinking at the bar and after the four defendants were outside, Bell and Reinhardt went through an alley and a rear door into the kitchen. They were later seen pulling Farrah out of the door, each holding one of his arms. They then gave Farrah a shove and Gilmore struck him on the back of the head or neck with a bottle. Farrah went down on the ground and Reinhardt, Bell and Gilmore jumped on him. He was kicked, badly beaten and left unconscious in the alley. His jaw was broken on both sides and he was badly bruised.

The first assignment of error was to the refusal of a motion by counsel for defendants to continue the case to the next session of quarter sessions court on account of the absence of two witnesses, Samuel Patton and Staley Gilmore, and because "counsel had insufficient time to adequately prepare their defense due to the fact that there are four defendants, and all of the facts relating to each are not similar and involve different witnesses." The facts set forth in the motions were not supported by an affidavit or other evidence. The motion did not show where the witnesses were, that their evidence would be material, what efforts had been made to secure their presence, and it did not allege that they could be secured at a later date. The information was made on December 30, 1938, the preliminary hearing was held on January 25, 1939, the indictment was returned on February 9 and the trial was begun February 15. The motions were made February 14 and refused the same day. When the case was tried it appeared that the absent witness Patton was a brother-in-law of one of the defendants. This assignment is without any merit.

An application for a continuance is addressed to the sound discretion of the trial judge and his action will not be disturbed unless that discretion has been abused:

*Com. v. Deni,* 317 Pa. 289, 293, 176 A. 919. The trial judge was entitled to know why these witnesses were not present and at the very least what effort had been made to secure their presence during a period of six weeks. If such unsupported averments were sufficient to convict a court of abuse of discretion in refusing a continuance that weapon would be constantly employed for the delay of cases to the resulting advantage of defendants. In view of the relationship between the absent witnesses and the parties, it would have required a strong showing to justify the court in continuing the case. There is not an iota of evidence to show that six weeks was not sufficient time to prepare a defense in an assault and battery case. "The all-important question in cases of this type is the time allowed defendant himself": *Com. v. Lockard,* 325 Pa. 56, 62, 188 A. 755. Also see *Com. v. Meyers,* 290 Pa. 573, 139 A. 374.

The second, third and fourth assignments of error complain that defendants were prejudiced in their trial by reason of their being cross-examined as to their whereabouts and actions for several hours after the assault took place. The defendants' own counsel interrogated the defendants as to how and in whose company they left the scene of the disturbance and they admitted that they left together and visited two lunch places. This brings us to the portion of their cross-examination to which objections were made. The questions objected to were in substance as to whether they did not take up their picketing or button inspection at the Viscose plant beginning at about 5 a. m. that day and they replied that they did. The defendants argue that they were prejudiced in their trial because jurors generally are not in sympathy with picketing. In view of the fact that it had been developed without objection that the purpose of the defendants in meeting was to secure assistance in picketing the plant of the Viscose Company, at the very best the cross-examination com-

plained of would be harmless. Great latitude is allowed in the cross-examination of a defendant who takes the stand on his own behalf (*Com. v. Delfino*, 259 Pa. 272 277, 102 A. 949), and it is a general rule that it is not sufficient to constitute reversible error to show that an improper question, in form or substance, has been put to a witness or that irrelevant evidence has been brought to the attention of the jury, but it must be shown that the question asked or the evidence elicited tended to prejudice the defendants' case: *Com. v. Williams*, 41 Pa. Superior Ct. 326, 336.

But in any event, the evidence was competent for the purpose of showing motive, intent, design or purpose. That there was a serious disturbance and fighting in which all of the defendants had some part and that as a result Farrah received a grievous bodily injury is not open to question. The jury was concerned with ascertaining among other things who was the aggressor and what, if any, criminal part any of the defendants had in the affair. Intent and malice were elements in a charge of aggravated assault and battery. It was, therefore, proper to show the motive for the attack on Farrah and an intent, plan or design to injure him. The defendants at the very outset of their defense claimed that Farrah was the aggressor while the Commonwealth contended that the attack was unprovoked and assigned as a motive the refusal of Farrah to join the C. I. O. Three of the defendants were members of that organization and the fourth had been and was related to at least one of the other defendants. There was much evidence tending to show a plan on the part of the defendants to intimidate Farrah or actually injure him if he did not pay dues to the C. I. O. This was shown by a witness Rogers, by the statements to which we have referred made when Farrah entered the tavern and by a statement made, to which we will later refer, when Farrah was being beaten and kicked in the alley as follows: "You will either pay your union

dues or else." There was testimony as to how the picketing would be conducted. From all this it is apparent that the actual picketing, which began at 5 a. m. the morning of the assault and within three or four hours thereafter, was part of a general plan or scheme and was evidence in corroboration of the other contentions of the Commonwealth. See *Com. v. Apriceno*, 131 Pa. Superior Ct. 158, 168, 169, 198 A. 515. The case of *Com. v. Wiswesser*, 124 Pa. Superior Ct. 251, 188 A. 604, relied upon by the appellants has not the slightest relation to this controversy. Neither does the Act of March 15, 1911, P. L. 20 (19 PS §711) have any bearing for the interrogations complained of did not tend to show that any of the defendants had been charged or convicted of any other offense or that they were of bad character.

The sixth assignment of error is to the refusal of the trial court to strike out certain evidence given by a witness, William Hart. That witness testified that he saw three of the defendants, whom he pointed out in court beating and kicking Farrah. He then testified: "Q. Mr. Hart, as you stood there in the alley at the corner of the Silver Dollar, from where you saw Mr. Farrah on the ground, and three fellows kicking and beating him, did you hear anyone say anything down there? A. Not until just before they left. Q. That is, before the three fellows left? What did you or any of the three fellows say at that time? A. I heard them say 'You will either pay your union dues or else.' Q. Could you tell which one said that? A. No." Although the witness Hart was extensively cross-examined he was not then interrogated with reference to the statement that "You will either pay your union dues or else." After eight or nine other witnesses had been called and examined, Hart was recalled the following day for further examination when he testified as follows: "Q. Mr. Hart, you testified on direct examination that sometime while you were observing what was

going on in the alley there that somebody said 'you will pay your dues or else,' is that right? A. Yes. Q. Who was it said that? A. I can't tell you. Q. Could you tell whether it was any of the three defendants or not? A. I can't tell you. Q. You don't know whether it was any of the defendants or not? A. No." There was unusual agreement upon the part of witnesses on both sides that there were only five men back in the alley where the beating took place and a number of the Commonwealth's witnesses identified the four defendants and Farrah as the five persons. It would not require a guess to find from Hart's testimony that the statement complained of was made by one of the four defendants. In any event, it was a question for the jury particularly in view of the fact that Hart was not over friendly to the Commonwealth's case and his later testimony was given after an interval of one day. Under the circumstances we have not the slightest doubt that the court properly refused to strike out the evidence given the day before. It was for the jury to determine the credibility of the witness and to draw the proper inferences from his testimony.

The fifth assignment of error is to the refusal of the trial judge to permit James Wilson, a witness called by the defendants, to express his opinion as to whether Arthur Price, a witness for the Commonwealth, was intoxicated at the time of the alleged assault about which Price had testified. The witness had stated that he had worked with Price during the entire time he was employed by the Viscose Company and that he saw Price at the Green Hedge restaurant between 11:30 and 12 p. m. and had a conversation with him and that he saw him walk about six to ten feet. He then testified: "How did he talk in comparison with his manner of speech on other times when you have heard him talk? A. Surly manner like. I could tell he was talking different than what he does at work. Q. When he walked, how did he walk? A. Well, he wasn't wob-

bling but he wasn't walking straight. Kind of in between. Q. Have you seen him walk on other occasions? A. Oh, yes. Q. How did he walk compare with his walk on other occasions? A. I didn't take much notice of that. Just as I say, it wasn't his natural walk. ...... Q. While you were at the bar talking to Mr. Price, were you close enough to detect any odor on his breath? A. Yes, sir. Q. Did you detect any odor? A. I did. Q. What was that odor? A. Smelled like liquor to me. Q. From the odor on his breath and the manner in which he spoke and the manner in which he walked, what was his condition in your opinion as to being sober or intoxicated?" The last question was objected to on the ground that Wilson had not shown the preliminary qualifications necessary to express an opinion. The trial judge sustained the objection. In our opinion this was not reversible error.

Intoxication on the part of a witness at the time of an occurrence about which the witness has testified is a proper matter for the consideration of a jury as affecting his credibility: *Com. v. Eyler,* 217 Pa. 512, 66 A. 746; *Com. v. Boyd,* 246 Pa. 529, 92 A. 705; 1 Wigmore on Evidence (2nd Ed.) §499. Intoxication may be evidenced by the person's conduct at the time in question or within such a time prior or subsequent within which the condition may be presumed to be continuous or by "predisposing circumstances", that is, by drinking intoxicating liquor, but the mere fact that one smelled liquor on another's breath is not a sufficient basis to justify the admission of the witness's conclusion that the person in question was intoxicated: *Laubach v. Colley,* 283 Pa. 366, 370, 129 A. 88; *Critzer v. Donovan,* 289 Pa. 381, 384, 137 A. 665. The defendants were permitted without objection to show such circumstances as were pertinent to a determination of the mental condition of the witness Price. The only limitation imposed was in not permitting Wilson to express an opinion categorically as to whether he was

sober or intoxicated. The real question involved is therefore not as to the admissibility of evidence to show intoxication on the part of a witness who has testified but as to the propriety of receiving from a layman opinion evidence under the particular circumstances.

"As a general rule it is the duty of lay witnesses to state facts and permit the jury to draw inferences therefrom": *Schuette v. Swank*, 265 Pa. 576, 583, 109 A. 531. " 'Whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible' ": *Kuhn v. Ligonier Val. R. R. Co.*, 255 Pa. 445, 450, 100 A. 142. Also see *Chambers v. Mesta Machine Co.*, 251 Pa. 618, 623, 97 A. 101. There are many situations, however, where lay witnesses are commonly permitted to express their opinions or beliefs, as for example as to sanity, intoxication, handwriting, personal identity, values and the like. These are cases " 'where mere descriptive language is inadequate to convey to the jury the precise facts or their bearing on the issue' " and in such cases " ' the description by the witness must of necessity be allowed to be supplemented by his opinion in order to put the jury in position to make the final decision of the fact' ...... Of course actual knowledge and observation on the part of the witness are the essential basis of the reception of his opinion, and in the usual and regular course such facts must be first proved as a foundation": *Com. v. Eyler*, supra, pp. 515-516. The witness must state the facts upon which his inference is based so far as this is possible and "the facts stated must afford a reasonable basis for the opinion expressed, and an opinion which is inconsistent with the facts stated should not be received": 22 C. J. p. 603.

The competency of a witness with respect to knowl-

edge, skill or experience, where this is required, is a preliminary question to be passed upon by the court before the testimony is to be received, at least where the competency of the witness is questioned: 22 C. J. p. 523. More particularly "the question of the qualification of a witness to express an opinion is one for the discretion of the trial judge whose ruling thereon will not be reversed by an appellate court except in case of clear error": *Davis v. Southern Surety Co.,* 302 Pa. 21, 26, 153 A. 119.

The trial judge by previous ruling had warned counsel for the defendants that the witness Wilson should be required to state further facts showing the basis for an opinion and this was not done. The jury had the facts however that Price talked in a surly manner, that he did not wobble and that he did not walk straight. The trial judge was in a better position than the appellate court to determine whether the physical condition of Price had been adequately described to the jury so that they might determine the ability of Price to observe and recollect. Bearing in mind that the word "intoxicated" has not a very definite meaning and may indicate a condition more or less under the influence of liquor, it is very doubtful whether the witness was in a position to unconditionally say that Price was drunk or sober. However, the jury had the full benefit of the witness's statement describing the actions of the witness Price as to sobriety and little if anything would have been added to the picture by unconditionally saying drunk or sober. In any event, the circumstances were not such that we can say that the court below was guilty of an abuse of discretion. This assignment of error must therefore be overruled.

The eighth assignment of error complains that the trial judge did not charge "fully and completely relative to concerted action before all of the defendants could be convicted." At the close of the charge counsel were asked if they had any "requests for additional charge

or corrections." To this counsel for the defendants replied: "I was thinking about each defendant is to be treated as though he were being tried separately unless there was a concerted plan or intention." The judge then stated in the hearing of the jury that he had covered the matter in his charge as he thought, but that he would then say it again. The court thereby gave its full assent to the law as stated by defendants' own counsel. That was all that defendants could ask.

The twenty-third assignment of error is that the court below included in the sentence of the defendants a direction that defendants should make restitution to the prosecutor for the injuries that he sustained. The sentence was as follows: "Now, February 27, 1939, the sentence of the Court is that you each pay a fine of One Hundred ($100) Dollars to Crawford County and the costs of prosecution; that you make restitution to Charles Farrah for the injuries which he has sustained at your hands; and that you undergo imprisonment in the Allegheny County Workhouse for a minimum term of not less than one (1) year and a maximum term of not more than three (3) years, to be computed from this date. You will stand committed until this sentence is complied with."

The Commonwealth concedes that the court was without power to direct that defendants make restitution to the prosecutor and we know of no authority for such action. The court below apparently had in mind the Act of March 31, 1860, P. L. 382, §179 (19 PS §981) which provides that in convictions for robbery, burglary or larceny or of receiving stolen goods it may be adjudged that the property taken be restored to the owner and that similar restitution shall be directed in certain cases of forgery and counterfeiting. The sentence was for aggravated assault and battery. The Act of March 31, 1860, P. L. 382, §98 (18 PS §2112) fixing the penalty for that offense does not provide for such a direction of restitution.

This does not mean that a new trial must be granted. The Supreme Court in *Beale v. Com.*, 25 Pa. 11, 22, said: "We have authorities to show that the Supreme Court, on reversal of a judgment in a criminal case for error in the sentence, has power to pass such sentence as the court below ought to have passed ...... It has also the power to award a *procedendo* in a criminal case ...... and it may, in its discretion, remit the record with orders to proceed on the indictment after the reversal of an erroneous judgment."

By the Act of June 24, 1895, P. L. 212, §8 (17 PS 192) it is provided that the Superior Court "may affirm, reverse, amend or modify any order, judgment or decree as it may think to be just, or it may return the record for further proceedings in the court below. But it may not increase (although it may reverse) any sentence upon any indictment." The direction that the defendants make restitution to the prosecutor did not in any way affect the sentence of fine and imprisonment. This direction is a mere nullity and was made without authority and the judgment entered in each case must be modified by striking out such direction.

We have examined all of the assignments of error and find nothing that warrants a reversal or further discussion by this court.

The judgment of the court below in each case as modified is affirmed and it is ordered that each appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part thereof which had not been performed at the time each appeal was made a supersedeas.