# Dungan, Hood & Company, Incorporated, v. Philadelphia & Reading Railway Company.

*Carriers—Common carriers—Railroad—Warehouse company—Principal and agent.*

1. In an action by a shipper against a railroad company to recover for goods lost, an agreement by a warehouse company which had acted as an agent of the shipper to procure the carriage to relieve the railroad company for loss occurring where goods were loaded by the warehouse company's employees, is inadmissible in evidence where there is no evidence of any authority in the warehouse company to make such a contract in relief of the railway company at the expense of the shipper.

*Practice, C. P.—Trial—Charge—Answers to points.*

2. A trial judge commits no error in declining a point without reading it to the jury, where he has sufficiently covered the matter of the point in his general charge.

Argued Oct. 6, 1909. Appeal, No. 251, Oct. T., 1908, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1902, No. 2,820, on verdict for plaintiff in case of Dungan, Hood & Company, Incorporated, v. Philadelphia & Reading Railway Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover the value of two bales of goatskins. Before FERGUSON, J.

The facts are stated in the opinion of the Superior Court.

At the trial one of the defendant's witnesses was asked this question:

"Q. Will you state what, if any, agreement you had with them with reference to the delivery of carload lots from their warehouse prior to June, 1902?"

Counsel for plaintiff objects and asks for an offer of proof.

The Court: What do you propose to show?

Mr. Lamb: I offer to prove a verbal contract between the warehouse company as the agent of the shippers to make delivery to the defendant company, that the goods in carload

lots should be loaded into the cars by the warehouse company's employees, and that the latter company, as shippers, should be responsible for any shortage.

The Court: Do you propose to follow it up by showing that this was communicated to Dungan, Hood & Co.?

Mr. Lamb: No, sir.

Objected to.  Objection sustained.  Exception allowed for defendant.

Verdict and judgment for plaintiff for $897.07.  Defendant appealed.

*Errors assigned* amongst others were (1) rulings on evidence, quoting the bill of exceptions; (2, 3, 4) answers to various points; (5) that the charge was inadequate.

*John G. Lamb*, for appellant.—The warehousing company was undoubtedly the agent of the appellee to make this shipment.  As such agent they had power to make any reasonable terms with the carrying company in regard to it, and such agreement binds their principals, though they have no actual knowledge of it: Chouteaux v. Leech & Co., 18 Pa. 224.

*James Wilson Bayard*, with him *John G. Johnson*, for appellee.

OPINION BY MORRISON, J., December 13, 1909:

In June, 1902, the appellee had in the possession of the Front Street Warehouse Company in Philadelphia a number of bales of goatskins.  During that month the officers of the storage warehouse were notified by the appellee to ship to them at their place of business, No. 2100 North American street, 116 bales of goatskins by the Philadelphia & Reading Railway.  In pursuance of said request, the said railway company, on the morning of June 19, 1902, placed upon the siding of the warehouse company the two empty cars asked for.  The cars were closed having a door upon each side.

The employees of the warehouse company loaded these two cars with goatskins, in bales, and one of their employees filled

out a bill of lading, reciting that these two cars were loaded with "116 bales goatskins." The numbers of the cars were given. The manager of the warehouse company testified that they first loaded the skins into the cars and then counted the bales and that there were 116 bales. After the cars were loaded, the bill of lading and the shipping order, both of which were filled up by an employee of the warehouse company, were taken by him to the office of the appellant, and the bill of lading was signed by an agent of the appellant and handed back to the employee of the warehouse company, the appellant company retaining the shipping order. When the bales of skins were delivered by the appellant company to the appellee, on June 20, 1902, there were only 114 bales of skins, the shortage being two bales of the conceded value of $649.11. The verdict for appellee was for that amount and interest.

To meet the appellee's case, which under its evidence appeared as above stated, the appellant presented considerable testimony of a negative character. But there was a serious break in the continuity of this evidence. It appeared that the cars containing the skins were moved by the appellant's servants on the morning of June 19 to the Berks street yards, but the skins were not delivered to the appellee till the morning of the 20th. And there was an item of evidence from which the jury could infer that the seals of the cars were tampered with on the night of June 19 or the morning of the 20th before the bales of skins were delivered to the appellee. Under all of the evidence, the case was for the jury, and we think it was fairly submitted to them by the learned court below.

The first assignment of error relates to an attempt by the appellant to prove that it had an agreement with the warehouse company whereby that company agreed to be responsible for any loss occurring where goods were loaded by its employees into the appellant's cars. The court rejected this evidence. There is no evidence of any authority in the warehouse company, and no such authority can be implied, to relieve the appellant, a common carrier, from liability to the shipper for loss of goods or damages to them while in the custody of the carrier. At most, appellant's offer would only show or tend

to show that in case of a loss as above indicated, the carrier might look to the warehouse company. The warehouse company was agent of appellee to procure a contract of carriage, not itself to assume the carrier's liabilities. The law fixes the liability of common carriers, and surely the shipper can rely on that liability unless, by himself or his duly authorized agent, he has agreed not to look to the carrier for his damages in case of a loss. The first assignment is not sustained.

The second assignment (first point) does not disclose reversible error. The point was declined, without reading it to the jury, because there was no controversy over the fact that the warehouse company was the agent of the appellee, and the point merely contains a brief statement of certain of the facts in the case, and it did not contain all of the facts. Moreover, the facts therein recited were not pertinent to the real issue in the case. This was, under the evidence, solely whether or not the appellant received the two missing bales of skins. And the learned court below left this question to the jury in a fair and impartial charge.

The third point (third assignment) was declined without reading it to the jury. In this there is no error. The court had specifically instructed the jury, in the general charge, the question for them to decide was whether or not the appellant received the whole 116 bales of skins. It was not necessary, therefore, to repeat this instruction in a point. The third assignment is not sustained.

The fourth assignment is that the court erred in not giving a binding instruction in favor of the defendant. The learned counsel for appellant has not argued in support of this assignment, and it is very clear to us that the learned court below did not err in holding that the case was for the jury. The fifth assignment is in substance that the court erred in not delivering an adequate charge to the jury. We have already seen that the real question at issue was fairly and adequately presented to the jury, and the learned court in two places in the charge pointedly requested the counsel to call attention to any further point of instruction desired. No exception as to the adequacy of the charge was taken.

The learned counsel for appellant has presented an elaborate argument containing reference to many authorities. His argument and authorities have received careful consideration, but we are not convinced that the learned court below committed reversible error and, therefore, it is unnecessary to comment upon and distinguish the authorities cited.

We have not sustained any of the assignments of error and, therefore, they are all overruled and the judgment is affirmed.