# Commonwealth of Pennsylvania *v.* Wright et al., Appellants.

*Criminal law—Intoxicating liquors—Case for jury.*

In the trial of an indictment for the illegal possession and transportation of intoxicating liquors, a verdict of guilty will be sustained, where the evidence of the Commonwealth established that the defendant had directed and participated in the removal of a truck loaded with illicit beer, from a garage, and was transporting it when arrested.

Argued March 16, 1925. Appeals, Nos. 68, 69, 70 and 71, by defendants, from judgment of Q. S. Bucks Co., March T., 1924, No. 14, in the case of Commonwealth of Pennsylvania v. Martin V. Wright, Hyman Gerofsky, William S. Cooper and Frank Porter. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Indictment for the illegal possession and transportation of intoxicating liquors. Before SMITH, P. J., 34th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendants appealed.

*Errors assigned* were refusal of motion in arrest of judgment, refusal to withdrawal of a juror for improper remarks of district attorney, the charge of the court, answers to points, and the sentence of the court.

*Howard I. James* and *Henry M. Stevenson,* and with them *Harry Heher* and *Boyer and Van Artsdalen,* for appellant.

*Hiram H. Keller,* for appellee

OPINION BY LINN, J., April 28, 1925:

Wright, Gerofsky, Cooper, Porter and Pagello were indicted in separate counts for illegal possession and transportation of intoxicating liquor; when the case was called for trial, Pagello was ill, and the other four were tried together; they were convicted on both counts and took separate appeals to this court; thereafter Cooper withdrew his appeal. The appeals of the other three were argued in one brief, and shall be disposed of in one opinion. There was sufficient evidence, if believed, to convict, and as it was the duty of the jury to find the facts, we must accept their verdict.

Without referring to all the evidence that may have convinced the jury, it was to the following effect. Between 6 and 7 o'clock p. m. December 24, 1923, in South Langhorne, Bucks County, a local policeman, Worrell, stopped a motor truck transporting 69 half-barrels and 1 quarter-barrel of beer, containing 4.75% alcohol. The driver escaped and the officer drove the truck into a garage near by. Discovering in the cab of the truck, evidence that it was owned by A. Miller, of Philadelphia, and being unable to reach Miller by telephone, Worrell called up Wright, one of appellants, a justice of the peace at Morrisville, Bucks County, and asked Wright to notify the owner that his truck was in the garage at South Langhorne, abandoned by his driver. Wright testified he received Worrell's telephone call at his home at about 11:45 p. m., and though denying the substance of the message as Worrell testified to it, he immediately prepared to take possession of the truck and contents. Morrisville is on the Delaware River, at the western terminus of a bridge extending over the river to Trenton; it is about 7 miles east of South Langhorne, both towns being on the Lincoln Highway. Wright telephoned to Trenton, as he says, for a driver. But we note what the jury may have regarded as a significant contradiction in his evidence. Once he testified that he called and reached Pagello on the telephone, but elsewhere in '

his testimony, he says he called Gerofsky, "because I knew a taxi driver was there"; asked what Gerofsky might have been doing at that time of the night, he replied, "he had a restaurant"; another witness said he was a hotel keeper.    At all events, what happened was that Pagello, who was the cook in that restaurant, and Gerofsky who, as the jury may have found on Wright's evidence, conducted the restaurant, and Porter, described as Gerofsky's barkeeper, said to be in charge of the sale of soft drinks in Gerofsky's restaurant, arrived at Wright's house in Gerofsky's car.    Wright said he had been "associated with" Gerofsky for many years and had known him all his life.    Wright was taken into Gerofsky's car and driven to the garage containing the truck at South Langhorne.

Cooper came to Langhorne in his own car, in circumstances which need not be again referred to in view of the withdrawal of his appeal.

When Gerofsky's car arrived, the state police, who afterwards made the arrest, were concealed behind the garage, watching through a window what appellants did. Wright, Pagello, Porter and Gerofsky went into the garage to the truck and it was driven out, with Pagello and Porter in the cab and Gerofsky and Wright directing and guiding it out past other cars.    The truck was enclosed and the doors were locked, but one of the state police testified that the contents could be seen from the rear through some opening; in addition, there was an odor of beer about the truck, which, as one witness testified, was noticeable even in the cab, though separately partitioned from the rest of the truck.    Worrell informed the truck driver that it was a load of beer.    The truck was then driven eastward toward Morrisville and Trenton, at a speed of 10 or 12 miles an hour, and immediately behind it, Gerofsky and Wright followed in Gerofsky's car.    Why did they trail this slow-moving truck?    After having proceeded in that order for about three miles, the state police, who had come up, stopped

and arrested them. Neither of the parties driving had with them driver's licenses. Wright, who was armed with a revolver, testified that he had been drinking and was under the influence of liquor, and there was other evidence that he was drunk. He testified that he intended to take the truck to Morrisville and place it in a garage there, explaining in response to a suggestion that the garages in Morrisville were all closed at that hour of the night, that he had a key to a garage into which he could have put the truck. In defense, there were contradictions of the evidence for the Commonwealth, which the verdict requires us to lay aside.

It is perhaps not surprising that on such evidence the jury convicted appellants on both counts. No proceeding concerning or involving the truck had been begun before Wright as justice of the peace; he had merely been asked to notify Miller where his truck was; he gave no good reason for taking the truck out of the garage at South Langhorne in the middle of the night; that a drunken man, at midnight, should gather from an adjoining state at the eastern terminus of the bridge, a restaurant keeper, his bartender and his cook to come into this State and, in force, to go to South Langhorne and take possession of a truckload of beer, and drive it eastward toward Morrisville, (at the same time, also in the direction of Gerofsky's restaurant at the eastern end of the bridge), was doubtless persuasive with the jury. The examination of the truck in the garage by Gerofsky and Wright, their assistance in guiding it while it was being backed out, their trailing along behind it at a slow pace for perhaps three miles in the circumstances already indicated, is sufficient to fix them with the possession or custody of it, with knowledge of its contents, within the terms of the statute, providing that possession shall be prima facie evidence of illegality. The jury did not accept their explanation of their conduct.

The assignments of error are numerous and we all agree that they need not be recited specifically. We must dismiss the assignment complaining that when Wright was asked when Gerofsky quit the hotel business and replied that he did not know, the district attorney said "Oh, yes, you do know. Haven't you been warned within the last year or two to stay away from Hyman Gerofsky?" The district attorney's assertion, "Oh, yes, you do know," might have been a breach of the rules governing cross-examination, depending on the circumstances in which the utterance was made. The record shows that when immediately afterward, the court stated that if the district attorney desired, he would be permitted "upon cross-examination to interrogate the witness relative to his association and intimacy with any of the defendants, counsel for defendants said 'I have no objection at all to that'; the court added, [referring to the questionable contradiction of the witness] 'I don't think the district attorney intended any reflection.'" As we read it, the episode was harmless to appellants.

Appellants also contend that as Wright was a justice of the peace, it must be presumed that he "was acting properly and in the performance of his duty" in taking possession of the truck and moving it from Langhorne. But the verdict establishes that such a presumption is inapplicable. Wright knew Worrell was a police officer and therefore that the truck was in the custody of an officer; so that, though we consider it irrelevant to Wright's contention, he obtained no immunity under section 9 of the Act of March 27, 1923, P. L. 38, providing that "When any officer shall discover any person in the act of transporting, in violation of this act, intoxicating liquor......it shall be his duty to seize......" it; for the truck had already been seized by an officer who had stopped the transportation thereof and taken charge of it. As has been said, no proceeding was instituted before Wright; he had merely been asked by Worrell "to notify Mr. A. Miller that his truck was in South

Langhorne and that his truck driver had went home and tell him to come out and get it." The truck never became subject to Wright's official cognizance. But, what is of course now conclusive against appellants, notwithstanding what has been said, is that the court instructed the jury that if Wright took possession of the truck officially, there could be no conviction.

Appellants also contend that the state police, who made the arrest, enticed appellants into committing a crime, which they otherwise would not have committed. If it had appeared that the offense had originated in the minds of the state police and that the idea of its commission had by them been suggested or transferred to appellants, who until then had been innocent of it, and that but for the suggestion or instigation, the thought of the crime would not have occurred to appellants, there might be some basis for the contention, but on the evidence referred to, there is no foundation for that contention: Com. v. Wasson, 42 Pa. Superior Ct. 38. But notwithstanding that also, the court charged "that if the jury find that they were so entrapped then you should find them not guilty."

Some assignments go to the refusal to affirm points stating abstract legal propositions; they were not read to the jury, and they were refused because the trial judge thought he had "covered [in the general charge] more accurately the law relating to the subject-matter of the points for a more intelligent consideration of the jury." No harm was done by that course: Dungan v. Ry. Co., 41 Pa. Superior Ct. 269; Com. v. Brown, 264 Pa. 85.

The assignments to the refusal of a new trial, and the refusal to direct verdicts of not guilty, are obviously without foundation. But little need be said concerning the remaining assignment complaining that undue prominence was given to the evidence produced by the Commonwealth as compared with what was said of the evidence in defense. At the end of a very long and elaborate charge, the trial judge asked counsel whether there

Opinion of the Court. [85 Pa. Superior Ct.

were any omissions or errors, stating he wished to correct them, if specified; appellants' counsel replied by desiring additional instructions concerning reputation, and the court complied with the request; no other suggestion was made. This complaint is also dismissed: Com. v. Longwell, 79 Pa. Superior Ct. 68, 74; Com. v. Razmus, 210 Pa. 609, 611.

The judgments are severally affirmed and the record remitted and in each case it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.