## Commonwealth v. Hess

Before Braham, P. J. (Fifty-third Judicial District, specially sitting) and Kennedy and Weiss, JJ.

*William S. Rahauser*, district attorney, and *Craig T. Stockdale* and *Maurice Goldstein*, assistant district attorneys, for Commonwealth.

*Barney Phillips* and *J. I. Simon*, for defendant.

WEISS, J., March 12, 1948.—Defendant, Ada Hess, was tried before the writer and a jury, charged with prostitution.

At the close of Commonwealth's case defendant demurred to the evidence. The court refused the demurrer. Defendant offered no testimony and the court submitted the case to the jury with adequate instructions, of which defendant does not complain. The jury

deliberated 20 hours and, when unable to agree upon a verdict, was discharged by the court.

Defendant complains:

1. That the words uttered by Lieutenant Maloney, principal Commonwealth witness, constituted "an entrapment" that would justify the court in sustaining the "demurrer".

2. That the court erred in submitting the case to the jury, and should now, upon motion filed by defendant, reconsider and sustain the demurrer.

3. That the court should grant *judgment on the whole record,* which in effect was a renewal of the demurrer. Counsel for defendant also argued orally that the court should grant a *"motion in arrest of judgment".*

The testimony developed at the trial follows:

Lt. Lawrence Maloney, principal Commonwealth witness, testified that defendant was walking along Grant Street near the William Penn Hotel in the City of Pittsburgh at about 10:30 p. m. on a Sunday night; that defendant said "Hello," and that Lieutenant Maloney said "Hello, Ada. *You are not still in business, are you?"* Defendant replied, "Oh, sometimes, but not in here any more" (pointing to the William Penn Hotel). Whereupon, Lieutenant Maloney and his officer friend asked her to get into Lieutenant Maloney's car. They drove her to a place where the crime was to be committed, when the officers identified themselves and arrested defendant.

Defendant contended that the words of Lieutenant Maloney constituted an "entrapment" in the eyes of the law, inasmuch as the suggestion to commit the crime for which defendant came to trial *originated* in the mind of the lieutenant of police, the arresting officer and chief prosecution witness (whether it so originated intentionally or unintentionally not being material) and therefore the demurrer should have been sustained and defendant discharged.

The court believed that the contention of defense counsel had substantial merit, for only following lengthy argument by counsel did the court refuse the "motion for demurrer" and submitted the case to the jury with reluctance, with the specific instruction that if the jury believed that *those words* (not denied) suggested to defendant to commit the crime charged, *then* defendant should be found "not guilty".

There are few precedents in this Commonwealth involving entrapment. Authorities in the various jurisdictions differ as to the law of entrapment, but the leading cases in Pennsylvania are Commonwealth v. Wright et al., 85 Pa. Superior Ct. 412, Commonwealth v. Wasson, 42 Pa. Superior Ct. 38, and Commonwealth v. Hollister, 157 Pa. 13.

President Judge Rice, in an able opinion in the Wasson case, supra, said (p. 56) :

"An examination of a large number of cases shows that in most of them in which the fact that the alleged criminal act was incited by another for the purpose of *detecting* and *punishing* the person *incited to it* has been held to be a *defense*, it has been because the consent of the person against whom or against whose property the crime was intended to be committed took away from the act one of the essential qualities of the crime charged. Connor v. People, 18 Colo. 373, relied on by appellant's counsel, in such a case. We need not stop to consider whether the case is in entire harmony with Com. v. Hollister, 157 Pa. 13. Even conceding the correctness of the decision in the Colorado case, *namely, that persons cannot be convicted of conspiracy to commit larceny if they merely adopt a scheme which is suggested to them by a detective* and which has received the approval of the owners of property, the principle is not applicable here. . . . *Without declaring* that under no circumstances ought the courts to direct an acquittal of a crime clearly proved *upon the ground that the accused was entrapped into it by immoral and*

*illegal detective methods,* we are quite clear that there is *enough evidence* that the purpose was to *secure the conviction* and punishment of those suspected to be engaged in criminal practices to bring this case within the second class above mentioned, and *that the court did not err in refusing to direct an acquittal upon the ground of public policy.*" (Italics supplied.)

There is no such ground of public policy involved in the instant case, and the court commends Lieutenant Maloney, the arresting officer and chief prosecuting witness, for his frank admission to the court that he regretted his action—but, as he testified, "Once I started I had to go through with it."

We believe that the words uttered and the circumstances surrounding the arrest by Lieutenant Maloney constituted an "entrapment", but the trial judge is powerless to reconsider the motion for a demurrer.

The writer, during his term as a member of the Pennsylvania Legislature, was the author of the Act of June 5, 1937, P. L. 1703, which provided:

"Section 1. Be it enacted, etc.

That hereafter in all criminal prosecutions, the action of the defendant at the close of the Commonwealth's case in demurring to the evidence submitted by the Commonwealth, shall not be deemed to be an admission of the facts which the evidence tends to prove or the inferences reasonably deductible [deducible?] therefrom except for the purpose of deciding upon such demurrer, and if the court shall decide against the defendant on such demurrer, such decision shall be deemed interlocutory only, and the case shall proceed as if such demurrer had not been made."

The primary objective and intent of the Act of 1937, supra, was to give to defendants in criminal proceedings the same rights and privileges in the law enjoyed by defendants in civil proceedings—for prior to the Act of 1937 there was no proceeding recognized in our criminal law which was the equivalent of a motion for

a voluntary nonsuit in civil cases. From the foregoing, it is apparent that the purpose of the Act of 1937 was to afford defendant an opportunity to require the court to pass on the sufficiency of the Commonwealth's evidence, by a demurrer to the evidence, without assuming the risk of consequences which followed such a demurrer under the former practice. The difficulty prior to the Act of 1937, supra, was the *defendant could not move or ask* (for acquittal) that this be done except by a demurrer to the evidence, which carried with it the discharge of the jury and the possibility of his being adjudged guilty by the court on the evidence of the Commonwealth. Defendant could not ask for a nonsuit, nor could he require the court to rule on the sufficiency of the Commonwealth's evidence until all the evidence in the case was in. If, prior to that stage of the case, the court declined to do so, defendant could not appeal therefrom nor assign such refusal as error. His course was to present a point for binding instructions. If this was refused, and he was found guilty, he could then appeal and assign the refusal of the point as error.

We recognize that the trial court has no authority in law to reinstate or reconsider a demurrer, where a demurrer to the Commonwealth's evidence is overruled, defendants offer their defense and the case submitted to the jury, resulting in a verdict of guilty.

We doubt that the trial court could on its own motion or motion of defense counsel reconsider its action on the demurrer, once it had been refused, the case submitted to the jury and the jury disagreed, as in the instant case.

An excellent opinion for its clarity on the interpretation of the Act of June 5, 1937, P. L. 1703, actually a treatise on the subject matter of "demurrer", was written by President Judge Keller in the case of Commonwealth v. Heller et al., 147 Pa. Superior Ct. 68, in which this able jurist held:

"Where a demurrer to the Commonwealth's evidence has been overruled and the defendants have taken the stand and offered other evidence in their behalf, and the case is submitted to the jury, resulting in a verdict of guilty, the trial court cannot, *of its own motion*, following the filing by the defendants of motions for a new trial, *reconsider its action on the demurrer* and sustain the demurrer and discharge the defendant.

"The trial court does not have such power under the common law, nor is such authority conferred by the Act of June 5, 1937, P. L. 1703, which limits the effect of demurrers to the evidence in criminal prosecutions.

"A trial court can enter judgment contrary to the verdict of a jury only when the authority to do so has been established by the practice at common law or *has been expressly conferred by statute*. The Act of April 22, 1905, P. L. 286, does not apply to criminal cases.

"The changes effected by the act are: (1) The Commonwealth need not join in the demurrer. (2) The court must act upon it and either sustain it or overrule it. (3) The demurrer does not admit the truth of the Commonwealth's evidence—'except for the purpose of deciding upon the demurrer'—so as to conclude the defendant, if the demurrer is overruled. (4) If the court overrules the demurrer, the statute declares that 'such decision shall be deemed interlocutory only, and the case shall proceed as if such demurrer had not been made'—that is, the decision is not appealable *by the defendant until final judgment is entered against him on a verdict of guilty*." (Syllabi) (Italics supplied.)

We believe this to be sound law, and in the absence of a verdict in this case we are without authority in law to reconsider the trial court's action on the demurrer.

Defendant's motion for judgment on the whole record (we know of no such proceeding in our criminal jurisprudence) in the nature of a reconsideration of

the demurrer to the Commonwealth's evidence, will be refused.

This court en banc is in unanimous accord that there is no merit to defendant's request for "motion in arrest of judgment". It is clear to this court that *there was no judgment in this case, for a jury disagreement is no judgment in law.*

Sadler on Criminal and Penal Procedure in Pennsylvania, secs. 516-518, holds: ·

Where a verdict of guilty has been rendered in a criminal case, the trial court *may* arrest the judgment for some matter appearing on the face of the record which would render the judgment erroneous if given. *But it must arise from intrinsic causes appearing on the face of the record. Evidence given on the trial does not become a part of the record to be considered on motion in arrest of judgment.* (Italics supplied.)

See Commonwealth v. Kammerdiner, 165 Pa. 222.

The law of Pennsylvania regarding the lower court's right to grant a motion in arrest of judgment was set forth by Mr. Justice (now Chief Justice) Maxey in the case of Commonwealth v. Jones, 303 Pa. 551, in which the Chief Justice said:

". . . insufficiency of evidence gives no support to a motion in arrest of judgment but does support a motion for a new trial, . . . Arrest of judgment arises from intrinsic causes appearing on the face of the record."

We believe that under all the circumstances, the court in the retrial of this case should seriously *consider* the circumstances and the words uttered by the chief Commonwealth witness—as constituting an "entrapment" under the law of this Commonwealth—but the trial judge in the instant case is without authority in law or precedent to *reconsider* the demurrer on the present state of the record.

The motion in arrest of judgment will be refused.