# Commonwealth *v.* Brown, Appellant.

*Criminal law—Murder—Degrees—Charge — Interrogation as to other crime—Desertion from army—"Offense"—Act of March 15, 1911, P. L. 20—Statement of dying man—Res gestæ—Admission—Reading evidence—Exhibit—Discretion of court—Appeal—Review—Harmless error.*

1. Where, on the trial of an indictment for murder, the trial judge eliminates all questions of murder committed during the perpetration of burglary, he commits no error in refusing to affirm points to the effect that, as there was no evidence to show the store entered by defendant, was part of a dwelling house, defendant could not be convicted of murder committed in the course of burglary within the meaning of the statute defining the degrees of murder.

2. In such a case, while the trial judge might have affirmed the points, his failure to do so, in view of the circumstances, did no harm, and was not reversible error.

3. A conviction of murder will not be reversed, because the district attorney asked the defendant whether he was a deserter from the army, and the defendant answered in the affirmative, where it appears that no objection was made at the time to the question, that subsequently defendant was interrogated by his own counsel about the matter, and no objection was taken to the testimony until the court refused to permit defendant to give his reasons for deserting. Under such circumstances the objection came too late.

4. Not decided whether desertion from the army is an offense within the meaning of the Act of March 15, 1911, P. L. 20, which forbids persons under trial from being interrogated as to the commission of other crimes by them.

5. On the trial of an indictment for murder testimony of a witness that the deceased, immediately before his death, stated that defendant had shot him, is admissible, where the evidence shows that the statement was made within the presence and hearing of the defendant. If there is a question whether the defendant actually heard this particular statement, it is for the jury to decide.

6. It is not reversible error for the trial judge in a murder trial to refuse the request of a juror to have read to him a portion of the testimony, which he claimed he had not heard. The reading of such testimony would give it undue prominence over other testimony, and work an injustice to one side or the other.

7. Nor is it reversible error in such a trial to refuse a request of a juror to view an exhibit which he claimed he had not seen, where it is not shown that the exhibit had been offered in evidence, or any request had been made to send it out with the jury. Such a matter is within the discretion of the trial judge.

8. Where a defendant is tried for the killing of two men, under very similar circumstances, the fact that the jury returned a verdict of first degree as to one of the men and of second degree as to the other, is no ground for reversal.

Argued Jan. 7, 1919. Appeal, No. 5, Oct. T., 1919, by defendant, from judgment of O. & T. Allegheny Co., Sept. T., 1913, No. 33, on verdicts of murder of the first degree and murder of the second degree in case of Commonwealth v. Robert Henry Brown. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Indictment for murder of Wm. J. Elford and Chas. L. Edinger. Before SWEARINGEN, J.

Verdict of guilty of murder of the first degree as to Wm. J. Elford and of murder of the second degree as to Charles L. Edinger. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions set forth in the opinion of the Supreme Court.

*W. St. Clair Childs,* with him *Drayton Heard,* for appellant.—The provisions of the Act of March 15, 1911, P. L. 20, were violated, for the defendant had not put his character in issue, and there was no basis for asking if he was a deserter from the United States army: Com. v. Garanchoskie, 251 Pa. 247; Com. v. Rosmovicz, 21 Pa. Dist. Rep. 1027; Com. v. Melinkoff, 61 Pa. Superior Ct. 238; Canole v. Allen, 222 Pa. 156; Hopt v. Utah, 110 U. S. 574; Thompson v. Utah, 170 U. S. 343.

Failure to charge there was no burglarly under the statute defining degrees of murder, was error: Hollister

v. Com., 60 Pa. 103; Roland v. Com., 82 Pa. 306; Roland v. Com., 85 Pa. 66.

The hearsay testimony should have been rejected: Com. v. Dorwart, 19 Pa. Dist. Rep. 740.

*Harry A. Estep,* Assistant District Attorney, with him *Harry H. Rowand,* District Attorney, for appellee.

OPINION BY MR. JUSTICE FRAZER, March 10, 1919:

On the night of June 5, 1917, defendant entered the vestibule of the liquor store of William L. Elford, in the City of Pittsburgh. He was discovered by William J. Elford, son of the owner, who notified the police, and while he and two policemen, including one Edinger, were attempting to force their way into the entry two shots were fired from the inside, one of which, according to the theory of the Commonwealth, struck officer Edinger and the other young Elford, both of whom died later from their injuries. Defendant escaped from the doorway and in passing out by the rear was discovered and wounded by a bullet from the revolver of an officer who had been directed to guard that part of the premises. Defendant was indicted and convicted in the court below on two separate indictments which were tried together, one for the murder of William J. Elford, and the other for the murder of officer Edinger; the verdict in the Elford case being first degree murder and in the other second degree murder. The facts connected with the crime were fully submitted to the jury in a careful charge; reference to the evidence in detail is unnecessary except in so far as it may have a bearing on certain questions raised in the assignments of error.

The first and second assignments are to the refusal of a new trial and to the entry of judgment on the verdict, these questions will be considered under the other assignments.

The third and fourth assignments complain of the refusal of the court to affirm points to the effect that there

being no evidence tending to show the store entered by defendant was part of a dwelling house, defendant could not be convicted of murder committed in the course of burglary within the meaning of the statute defining the degrees of homicide. The trial judge refused these points as being "immaterial under the general charge." At the outset of the charge the jury were instructed they were not concerned with the fact that defendant entered the building and was there for an unlawful purpose, nor did the Commonwealth base its prosecution upon the theory that the homicide was committed while defendant was attempting to commit burglary. In discussing the degree of murder the court read to the jury the portion of the statute defining murder of the first and second degree and stated further, that, "in this case you have only to deal with the murder committed by 'any other kind of wilful, deliberate and premeditated killing'; as, for example, it is not contended that this killing occurred by means of poison, or by means of lying in wait, so that the portion of the statute which you have to apply to the evidence here is what we have indicated to you, namely, murder committed by any kind of wilful, deliberate and premeditated killing." After this instruction the court further charged as to the elements necessary to constitute wilful, deliberate and premeditated murder within the meaning of the law. This instruction was followed by the affirmance of defendant's fifth point to the effect that there could be no finding of murder of the first degree, unless the jury was convinced the killing was wilful, deliberate and premeditated, and, finally, at the close of the charge, in answer to an oral request that the jury be further instructed that the case did not come within the provisions of the statute relating to murder committed in the course of rape, robbery, arson or burglary, the court stated: "We do not think it necessary to repeat what we have said, namely, that the jury only has to deal with one kind of murder of

the first degree and do not see any necessity for repeating what we have already said."

All questions of murder committed during the perpetration of burglary were eliminated; consequently, the court was not in error in stating the points were immaterial under the general charge. The trial judge in using the illustration referred to clearly showed it was not contended the killing occurred by means of poison or lying in wait and did not intend to convey the impression that an inference might be drawn that the killing occurred during an attempt to commit burglary, nor could the jury have received such impression, as there was no attempt to refer to the latter clause of the statute relating not only to burglarly but also to arson, rape and robbery. While the trial judge might have affirmed the point, his failure to do so, in view of the circumstances above referred to, did no harm and is not reversible error: Creachen v. Bromley Bros. Carpet Co., 214 Pa. 15; Miller v. James Smith Woolen Machinery Co., 220 Pa. 181; Hufnagle v. Delaware & Hudson Co., 227 Pa. 476. See also Commonwealth v. McManus, 143 Pa. 64, 84, 85.

The fifth and sixth assignments of error are to the refusal of the court to withdraw a juror and continue the case because the district attorney asked defendant, on cross-examination, whether he was a deserter from the United States army. Defendant answered in the affirmative. No objection was raised at the time. Subsequently his desertion from the army was again referred to by defendant under examination by his counsel, and the fact brought out that a third person, who had knowledge of the matter, had been blackmailing defendant, and on the evening of the crime demanded ten dollars on threat of exposure if the demand was not complied with; the purpose of this being to disprove malice in committing the crime charged. On being asked by his counsel why he deserted the army, an objection that his action in so doing was immaterial was sustained by the court, and a motion to withdraw a juror, based on

the admission of the answer to the question the day before, refused. The Act of March 15, 1911, P. L. 20, provides that: "Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation." The wording of this act is mandatory and expressly forbids the asking of a question relating to the commission of another offense, the legislature apparently having in mind that the mere asking of such question has a tendency to create in the minds of the jury an unfavorable impression of defendant, whether it be entirely without foundation in fact and asked from improper motives, or whether it be based upon fact and defendant is obliged to take advantage of his right to refuse to incriminate himself. To hold the clause "if asked shall not be required to answer" was intended to operate as an implied recognition of the right to ask the question, as argued by the district attorney, is to ignore entirely the express mandate of the earlier clause and render it ineffective, inasmuch as, if such had been the intention, it would have been sufficient to insert only the provision that a defendant in a criminal case shall not be required to answer any question tending to show the commission of another offense: Commonwealth v. Garanchoskie, 251 Pa. 247, 251. The word "offense," while sometimes used in various senses, generally implies a crime or misdemeanor, infringing public as distinguished from mere private rights, and punishable under the criminal laws: Black's Law Dictionary, 847; 29 Cyc. 1351, 1353, and cases cited; Fetter v. Wilt et al., 46 Pa. 457, 460; though it may also include the violation of a penal statute for which the remedy is merely a civil suit to recover the penalty: Ott v. Jordan, 116 Pa. 218, 224. In construing the word in any specific instance regard must be had to

the sense in which it was used. In the Act of 1911, the purpose was to prevent the practice previously approved by this court in Commonwealth v. Racco, 225 Pa. 113, of permitting a defendant on trial for crime to be asked whether he had not committed other offenses. The purpose of the act was to avoid the reflection on defendant's character which must necessarily result from the mere asking of such questions; accordingly, the apparent intention of the legislature was to use the word "offense" in the sense of a criminal act for which he would be liable to prosecution under the criminal law. Defendant was subject only to military rules and regulations, and while the punishment for such act would, no doubt, depend to some extent upon whether a state of war existed at the time the desertion occurred, as well as the circumstances under which it took place, with this we are not concerned. In view of the fact that no objection was raised to the relevancy of defendant's desertion from the army at the time the question was asked, and for the further reason that defendant was afterwards interrogated by his counsel in regard to the matter, and not until the court refused to permit defendant to give his reason for deserting was there objection to the testimony, we are of opinion the objection came too late, and the court was right in its refusal to withdraw a juror as requested. Under these circumstances we deem it unnecessary to determine whether or not desertion from the army is an offense within the meaning of the Act of 1911.

The seventh assignment of error complains of the admission of testimony to the effect that the witness asked young Elford, at the time he was lying on the ground within a few feet of defendant, who shot him, to which Elford replied that defendant had shot him, the latter making no reply. The testimony thus offered was not competent as part of the res gestæ of the shooting, but a mere narrative of how it occurred, given in response to the question by the witness. The fact, however, that defendant was present and heard the conversation, and had

an opportunity to reply but made no denial of the charge, was evidence from which the jury might infer an admission that he did the shooting: Commonwealth v. Leskoski, 225 Pa. 382; Commonwealth v. Ballon, 229 Pa. 323. While it must be conceded that before defendant's silence can amount to an admission it must appear the conversation took place in his presence and hearing, the testimony shows defendant was within hearing, and, in fact, he admitted this. It was for the jury, therefore, to determine from the circumstances whether defendant actually heard this particular part of the conversation: Commonwealth v. Detweiler, 229 Pa. 304.

The eighth assignment is the refusal of the court to permit the jury, at the request of one of them, to have read a portion of the testimony of certain witnesses, and also to view an exhibit (a photograph of the premises) used on the trial. The juror stated he had not heard certain testimony and had not had an opportunity to examine the exhibit when passed around at the trial, but had been informed at the time by one of the attorneys that the privilege of examining it later would be given him. The court declined to do as requested but complied with an additional request to give further instructions on the question of reasonable doubt. The refusal to read the notes of testimony was proper under the rule stated in Commonwealth v. Ware, 137 Pa. 465, as to do so would give the testimony read undue prominence over other testimony, and thus work an injustice to one side or the other. In regard to the refusal to permit the jury to examine the exhibit, it does not appear why the exhibit had not been sent out with the jury or whether there had been a request made to that effect, or even that the exhibit had been formally offered in evidence. The matter was one within the discretion of the trial judge: Kittanning Insurance Co. v. O'Neill, 110 Pa. 548, 552; Cavanaugh v. Buehler, 120 Pa. 441, 458; and it does not appear that defendant was in any manner prejudiced by

the absence of the exhibit from the jury room : Riddles-burg Iron & Coal Co. v. Rogers, 65 Pa. 416.

Defendant also contends the verdicts in the two cases are inconsistent. The theory of the Commonwealth was that the defendant fired two shots at the time he was inside the vestibule and just as the door was pushed open from the outside by the officers and that immediately thereafter several shots were fired by the officers through the door. The contention of defendant is that only one shot was fired by him and that without intention of injuring those on the outside of the door, and that the resulting injury was entirely accidental. However this may be, there were two fatal shots from a 38-caliber revolver, the size used by defendant. While it is difficult to discover a reasonable basis for distinction between the verdicts in the two cases, the degree of the crime in each case was for the jury, and the fact that the conclusions differed is no reason for reversal.

The judgment is affirmed and the record remitted for purpose of execution.