# Commonwealth *v.* John Doe, Alias Ross, Appellant.

*Criminal law and procedure—Refusal to quash indictment—No injury to defendant.*

Where, upon the trial of a defendant indicted for robbery, the court refuses to quash certain counts in the indictment, and overrules a motion in arrest of judgment attacking the same counts, but sentences the defendant only upon the verdict as to other counts, no injury has been done the defendant.

*Criminal law and procedure—Robbery—Evidence—Former conviction—Right to question defendant—Act of March 15, 1911, P. L. 20.*

The Act of March 15, 1911, P. L. 20, which provides that a defendant, charged with a crime and called as a witness on his own behalf, shall not be asked any question tending to show that he has committed, or been charged with, or convicted of, any other crime, unless he shall have put his character in evidence, does not prohibit the introduction of evidence as to his participation in another criminal offense, where such evidence is offered to attack his credibility as a witness.

It is not error, in the trial upon an indictment for robbery, to permit the district attorney to read to the jury the record of a former conviction of the defendant, upon a similar charge, where the record is offered for the purpose of impeaching the credibility of the defendant as a witness.

*Practice, O and T.—Charge of the court—Failure to comment on evidence.*

The mere failure of the trial judge to comment, in the charge to the jury, upon a conflict in the testimony of witnesses for the Commonwealth is not sufficient to establish error. If the court did not try to impress on the jury the Commonwealth's view of the case, nor to withhold them from a free and deliberate consideration of all the evidence, there is no error in a mere failure to comment upon a certain part of the evidence.

Argued March 14, 1922.   Appeal, No. 102, April T., 1922, by defendant, from judgment of O. and T., Lawrence County, Sept. Sessions, 1921, No. 2, on verdict of guilty, in the case of Commonwealth v. John Doe, alias Sam Ross, alias Cedar Ross, alias Silvester Ross. Before ORLADY, P. J., PORTER, HENDERSON, KELLER and LINN, JJ. Affirmed.

Indictment for robbery.   Before SLOAN, P. J., Eighteenth Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were refusal to quash five counts of the indictment, admission in evidence of the record of a former conviction, the charge of the court, refusal to grant a motion to make matter of record a reported communication from the jury to the court, and the judgment of the court.

*Robert K. Aiken,* and with him *James W. Rhodes,* for appellant.—The counts charging robbery were not good because larceny from the person was not alleged: Com. v. White, 133 Pa. 182; Com. v. Mills and Adams, 3 Pa. Superior Ct. 161.

There is no authority for holding that a conviction of any crime tends to discredit a witness: Com. v. Keegan, 70 Pa. Superior Ct. 436; Com. v. Vardelle, 70 Pa. Superior Ct. 241.

*George W. Muse,* and with him *L. M. Uber* and *R. L. Hildebrand,* District Attorney, for appellee.—The omission of the trial judge to give instructions not requested by the defendant is not assignable by the latter as error: McMeen v. Com., 114 Pa. 300; Com. v. Booker, 72 Pa. Superior Ct. 395.

OPINION BY HENDERSON, J., July 13, 1922:

The defendant was indicted for participation in the robbery of the Union National Bank at New Castle, on the afternoon of May 24, 1921. The indictment contained nine counts charging various offenses, all of which were involved in the entering of the bank and the attack on its employees. An automobile containing five men was driven to the front door of the bank about one o'clock in the afternoon, and at least three of the occupants of the car entered the bank and by violence and threats put the employees of the institution in fear and obtained $58,-282.95 in currency. At about the time they came out of the bank, one of the men assaulted a policeman of the city who was approaching and forced him into the doorway of a building adjoining the bank. The policeman was compelled to surrender a revolver which he had been carrying, and this was taken away when the men engaged in the robbery fled in the automobile. The automobile was afterward found abandoned in Youngstown, Ohio, and was the property of a resident of Canton, Ohio, from whose premises it had been stolen on the night preceding the attack on the bank. About eight o'clock on the next Thursday morning, some members of the police force of Toledo, Ohio, went to a house in that city in search of one or more persons suspected of having committed a crime in that city. In a room in the house they found the defendant in bed with one William Fisher, and under the sheet where the men were sleeping two revolvers were found, one of which was shown by the Commonwealth to be the revolver taken from the police officer at the time the bank was robbed. The defendant had in his possession when examined about $487, and Fisher a little more than $407. Three hundred and seventy-five dollars of the money found in Fisher's possession was in new bills of the Union National Bank of New Castle. The men arrested were held for action of the Pennsylvania authorities and were subsequently taken to New Castle for trial. Fisher pleaded guilty to an indictment for robbing

the bank, and the appellant made a defense. The Commonwealth offered the evidence of the policeman from whom the revolver was taken and a woman living across the street who saw the assault on the officer and who identified the defendant as the person who made that attack. Evidence was also presented to identify one of the revolvers found in the bed where Fisher and the defendant were sleeping as the weapon taken from Officer Nelson. The defense offered was that the accused was not in New Castle on the day when the robbery was perpetrated, but on the contrary was in Canton, Ohio, to which place he came the night before and where he remained until Wednesday afternoon when he went to Cleveland. There he met Fisher, and that night he and Fisher went to Toledo. He had been in New Castle for three days at his sister's, but, as he alleged, left that place on Monday, going first to Youngstown and from there to Canton where he stayed Monday night and all day Tuesday. The defendant testified in his own behalf at the trial and afterwards the Commonwealth offered a record of the Court of Oyer and Terminer of Lawrence County showing the conviction of the defendant of robbery in a trial many years before.

Complaint is now made that the court erred in four respects: First, in refusing to quash the 3d, 4th, 5th, 6th and 7th counts in the indictment; Second, in permitting the Commonwealth to introduce the record showing a former conviction of the defendant of burglary; Third, in delivering an inadequate charge; Fourth, in omitting to give further instructions to the jury. With respect to the first objection, it is sufficient to say that the defendant was not sentenced on any of the counts alleged to be objectionable by the appellant. The court overruled the motion to quash these counts, and also the motion in arrest of judgment with respect to them, but the defendant has suffered no harm because of this action. It is not asserted that the 1st, 2d and 8th counts on which the sentence was imposed are not good, and as

the sentence is well supported by the pleading the appellant has not been injured.  The judgment from which the appeal is taken is that rendered on the counts conceded to be valid, and no sufficient reason has been presented to show that it was not supported by the indictment.

The second objection, 6th assignment, is based on the Act of March 15, 1911, P. L. 20, which provides "that hereafter any person charged with any crime and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless, he shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or, he shall have testified at such trial against a codefendant, charged with the same offense." This it is contended renders incompetent any evidence of participation in another crime to affect the credibility of the defendant where he has taken the stand as a witness in his own behalf.  It is not claimed that the statute in terms forbids such testimony.  An inspection of it shows that its words do not have that import.  The argument of the learned counsel for the appellant is that such is the spirit of the act or of the law to be deduced from this legislation.  We may consider, therefore, the attitude of a defendant as a witness in a criminal proceeding in connection with this subject.  At common law one convicted of a felony or other infamous crime was by that fact disqualified as a witness—the assumption of the law being that a person of such depravity of nature as permitted him to be guilty of a serious crime was not worthy of credit and was incapable of making such contribution to the truth in any judicial inquiry as was en-

titled to consideration, and this disability might be shown by the record or by the admission of the person affected. The Act of May 23, 1887, P. L. 158, removed the disability from all persons as witnesses in any criminal proceeding in any tribunal with exceptions not important here. A defendant is made competent to testify in his own behalf under this statute, but there is nothing to be found therein which puts him in a different situation with reference to his credibility than is occupied by any other witness. The Act of May 21, 1885, P. L. 23, renewed the right of a person charged with a crime, misdemeanor or felony of any grade to testify in his own behalf if he so desired, but protected him against any inference that might be drawn by his neglect, omission or refusal so to testify. Where the defendant appeared as a witness in a criminal proceeding under this statute, he was subject to inquiry on cross-examination whether he had been convicted and sentenced to prison for larceny or other felony—this for the purpose of affecting his credibility. It was held in Buck v. Com., 107 Pa. 486, that it was improper to ask a defendant when on the witness stand whether he had been convicted of a crime, for the reason that if he had been convicted the proper evidence of that fact was the record, but in Com. v. Racco, 225 Pa. 113, that case was overruled, and it was held that a defendant after he had testified in his own behalf might be questioned as to specific facts calculated to discredit him. His previous arrest or indictment, his conviction of a felony, his previous imprisonment in a penitentiary may be brought out by questions put to him on cross-examination to show what credit his evidence should receive. The purpose of such examination is obvious. When a defendant offers to testify in support of his own defense his credibility becomes a subject for the consideration of the jury. The jurors might be informed with respect to the things which would enable them to place a proper estimate on his testimony, and if this might be done on cross-examination, it could cer-

tainly be done by an offer of the record of a conviction in a criminal court. The object of the cross-examination is to establish the fact of the crime committed. This may be shown with even greater certainty by the record in the case. The purpose being by either method to enlighten the jury in regard to the value of the defendant's testimony. Was the rule changed by the Act of March 15, 1911, P. L. 20? That act was passed about two years after the decision in Com. v. Racco, supra, and it is to be assumed that the legislature had in view the state of the law at the time the enactment was proposed. It was said in Com. v. Brown, 264 Pa. 85, the purpose of that act was to avoid the reflection on the defendant's character which must necessarily result from the mere asking of such questions. It was not an infrequent occurrence that such inquiry was made where there was neither the ability nor expectation of proving the fact suggested if it were denied by the defendant and it is undoubtedly true that the mere asking of the question would excite the suspicions of jurors and create a prejudice against the defendant even if he denied the implication. This statute refers wholly to the cross-examination of the defendant when called as a witness in his own behalf. It does not otherwise restrict the field of inquiry as it previously existed. If the legislature had intended to exclude all reference to the prior conduct of the accused except that which related immediately to the crime under consideration, it could easily have been done, and the subject was suggested in the decisions in the Buck and Racco cases. Not having done so, we are not warranted in reading into the enactment an extension of the law beyond the language of the legislature. It will be seen by the record that the evidence was only admitted to affect the credibility of the defendant as a witness. A part of the offer of the Commonwealth was to show a former conviction, but as that was not charged in the indictment, the offer to that extent was properly overruled. Limiting the offer as was done by the court to its effect

on the testimony of the defendant, we regard the evidence as competent. It is argued that there was lacking evidence of identity of the defendant, but this was not raised in the objection to the testimony, and no assignment applies to that subject, nor are we convinced that it is available as a matter of law. Identity of name is ordinarily, but not always, prima facie evidence of personal identity: Sailor v. Hertzogg, 2 Pa. 182; Sitler v. Gehr, 105 Pa. 601; Sewell v. Evans, 4 Ad. & E. 632; and where the name is not common or the transaction is in the same locality, it is not unreasonable to give prima facie recognition of the identity and this is specially so in the case under consideration for the record was in the same court in which the trial was proceeding. The defendant's home was in New Castle; he was born there. In the indictment in the first case he was described as "Samuel Ross alias Cedar Ross," and he is so described in the indictment before us. It is highly improbable that two persons so identified would be living in the same community or in any community. No advantage was taken of the defendant for he could readily testify that he was not the person named in the other case if the fact were so. As before remarked, we think, however, that this question is not raised by any of the assignments. In this connection it should be noted that when the defendant was arrested in Toledo, Officer Delahant recognized him as a person whom he had seen about eight years before as "Sam Silvester." Thereupon the officer asked what his right name was, to which he replied: "Sam Ross." The defendant then proceeded to say: "You remember me. I was here—I was sent up from here for the Mount Latchey postoffice robbery." This statement was excepted to and a motion made to strike it out which the court refused, but this action was not assigned for error. As the case stands, therefore, the record shows evidence of a participation by the defendant in a robbery in the vicinity of Toledo, and the record of the Court of Oyer and Terminer of Lawrence County, is of like effect.

The criticism of the charge of the court relates principally to the omission to direct the attention of the jury to the contradiction of the testimony of Officer Nelson and Mrs. Evans as to the presence of the defendant at the scene of the robbery, and the corroboration by several witnesses of the testimony of the defendant that he was in the State of Ohio at the time the bank was robbed. A careful review of the charge does not convince us that it is defective to the prejudice of the defendant. The trial judge stated: "I will not undertake to go over the testimony of these various witnesses. I am not required to do that. You can do that just as well as I can, and it is your place to remember it, and you must pass upon it." The only specific reference to the evidence is a bare recital of the narrative of the occurrence and of the apprehension of the defendant and Fisher. We think the court did not undertake to impress on the jury the Commonwealth's view of the case, nor to withhold them from a free and deliberate consideration of all of the evidence. The charge was amplified by the affirmance of seven points presented by the defendant in which the case is presented fully as favorably to the defendant as he was entitled to. All of the evidence bearing on the defendant's alibi was in the minds of the jurors. It was the only defense. It was the subject of course to which the attention of the jury was directly drawn in the arguments of the counsel, and we think nothing of disadvantage resulted to the defendant from the omission of the court to restate that evidence. There were no complications in the testimony. The relevant facts were not numerous, and the jury could have no difficulty in understanding the bearing of the evidence. The case turned almost wholly on the credibility of witnesses and their appearance and manner of testifying doubtless had an influence on the minds of the jurors.

The fourth objection is covered by the 8th assignment from which it appears that the defendant's counsel understood that there had been some communication of the

162, (1922).]          Opinion of the Court.

jury with the court which they desired should be made a matter of record. With respect to the application the court said: "We know nothing except the communication we got that the jury could not agree. Outside of that I know nothing as to the fact simply what the tipstaff asked me, whether from the jury or not I do not know, and I said to him the points could not go out. And if he received that request from the jury of course he would likely take it back. I think there ought to be an affidavit as to the facts and sworn to." After further colloquy, the court refused the motion in the following terms: "The request is refused for the reason that no communication has been received from the jury or from any tipstaff in charge requesting that the points be referred or sent to the jury." As there is no record showing a different state of facts, there is no support for this assignment. On a consideration of the whole case, the assignments are overruled, the judgment affirmed, and the record remitted to the court below to the end that the sentence be carried into effect.