## Commonwealth v. Wiswesser, Appellant.

Argued September 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*B. D. Oliensis,* with him *Wm. Abbott Witman, Jr., J. Howard Jacobs* and *Emanuel Weiss,* for appellant.

*Mark C. McQuillen,* Assistant District Attorney, with him *John A. Rieser,* District Attorney, for appellee.

254

OPINION BY KELLER, P. J., December 17, 1936:

The defendant was tried on an indictment containing three counts, which charged him with having aided and abetted Robert R. Gerhart, the county treasurer of Berks County, in (1) the fraudulent conversion to his own use, (2) the fraudulent investment, and (3) the defalcation, of public moneys entrusted to him as such treasurer. There was ample evidence to support the verdict. If this court possessed the broad powers committed to the judges of the English Court of Criminal Appeal by the Criminal Appeal Act of 1907, and particularly the power to dismiss an appeal if they considered that no substantial miscarriage of justice had occurred, even though they were of opinion that the point raised by the appeal might be decided in favor of the appellant, we would dismiss this appeal. But by the long established practice in this commonwealth, which we are required to follow—(Act of June 24, 1895, P. L. 212, sec. 10, p. 220)—the appeal must be sustained and a new trial granted if substantial error was committed in the court below, which may have influenced the verdict to the defendant's injury. *(Goersen v. Com.,* 99 Pa. 388; *Com. v. Williams,* 307 Pa. 134, 141, 142, 160 A. 602; *Com. v. Loomis,* 270 Pa. 254, 261 to 263, 113 A. 428; *Com. v. Mull,* 316 Pa. 424, 427, 175 A. 418; *Com. v. Croson,* 243 Pa. 19, 89 A. 821; *Com. v. Weiner,* 101 Pa. Superior Ct. 295, 299). It is only harmless error, such as the appellate court is satisfied did no injury to the defendant, which may be disregarded on appeal. *(Com. v. Varano,* 258 Pa. 442, 102 A. 131; *Com. v. Emery,* 273 Pa. 517, 117 A. 338; *Com. v. Martin,* 302 Pa. 118, 153 A. 141; *Com. v. Craig,* 19 Pa. Superior Ct. 81, 96). A careful reading of the record in the case satisfies us that substantial error was committed by the learned trial judge in the allowance of questions asked the defendant on his cross-examination, and the answers to them *(Com. v. Craig,*

supra), as well as in his own examination of the defendant, and that this error may have influenced the jury, to the defendant's injury, in arriving at their verdict. Hence we are obliged to order a new trial.

We shall not discuss in detail the nineteen assignments of error filed by the appellant. We have given them all due consideration and are of opinion that none of them, except those referred to above,—assignments two and three—requires a reversal of the judgment. A considerable part of the brief and argument was devoted by appellant's present counsel to a point not raised in the court below nor covered by an assignment of error: It is alleged that the time laid in the indictment for the commission of said offenses,—February 21, 1936—was subsequent to the expiration of the county treasurer's term of office, which is said to have been, January 6, 1936. As before stated, the matter was not raised in the court below by motion to quash or demurrer, nor brought to the attention of that court by any motion filed before sentence was imposed. The defendant went to trial without objection to the alleged defect in the indictment, if it existed. The testimony in the case, which, by the Act of April 18, 1919, P. L. 72, is made part of the record on appeal, shows conclusively that all the acts constituting the offenses charged were done or committed while the county treasurer, Gerhart, was still in office. Had the point first argued in this court been raised in the court below the indictment could have been amended to conform to the facts proved. The Criminal Procedure Act of March 31, 1860, P. L. 427, in sections 11, 12 and 13, makes liberal provision for the amendment of indictments. In *Myers et al. v. Com.* 79 Pa. 308, after the jury had been sworn, the court ordered the time laid in the indictment, wherever it occurred, to be changed from October 11, 1874 to November 11, 1874, and the Supreme Court held the amendment was within the Act of 1860.

In *Com. v. Tassone,* 246 Pa. 543, 92 A. 713, after verdict of guilty in a murder case, the court permitted the date laid in the indictment, October 31, 1914, to be amended to October 31, 1913, as the former was a palpable error in that it charged that the offense had been committed more than six months after the date of trial. The Supreme Court, on appeal, sustained the action of the lower court, saying: "A mis-statement in an indictment of the date of the commission of a crime is a mere formal defect if it be shown on the trial that the offense charged had been committed: *Commonwealth v. Major,* 198 Pa. 290; *Commonwealth v. Powell,* 23 Pa. Superior Ct. 370. The wrong date disclosed in the indictment returned by the grand jury in this case having been a mere formal defect, it was cured by the amendment clearly allowable under the Act of March 31, 1860, and there is, therefore, no merit in the main contention of learned counsel for the prisoner." See also *Com. v. Lingle,* 120 Pa. Superior Ct. 434, 182 A. 802; *Com v. Schoen,* 25 Pa. Superior Ct. 211; *Com. v. Brennan,* 193 Pa. 567, 44 A. 498. As it was amendable if the point had been raised on the trial, it is too late to raise it now. Furthermore, apart from the evidence which establishes that the acts complained of were committed during the county treasurer's term of office and within the period prescribed by the statute of limitations, there is nothing in the record to show that the treasurer's term of office expired before February 21, 1936, the date laid in the indictment. There are no facts in the record, apart from the evidence, which show any mistake or error whatever in the date laid in the indictment.

The relevant facts, as brought out in the trial, may be summarized from the opinion filed by the learned President Judge of the court below, as follows: "Robert R. Gerhart was the County Treasurer of Berks County for the term of four years ending the first Monday of January, 1936. An audit of his accounts disclosed a

shortage of $64,612.61. At the close of his term he had in his possession 41 checks received from the defendant here, the total of which equalled exactly the amount of the shortage. Five of these checks, aggregating $25,815, were checks drawn by this defendant individually to the order of Gerhart; twelve, totalling $22,434.16, were drawn by Deppen Manufacturing Company, [a brewing company of which defendant was president and the practical owner] by Louis E. Wiswesser, President, or simply Louis E. Wiswesser, President, to the order of Wiswesser himself and endorsed by him, or, in one case to George Michael and endorsed by him; one was drawn by John F. Hyneman, Agent, to the order of Deppen Manufacturing Company and endorsed by defendant as president; one was drawn by Hof Brau Cafe to the order of Deppen Manufacturing Company and endorsed by defendant as president; and the remaining 22 checks, totalling $8,424.35, were drawn by Dutkin Bros., Inc., to the order of the Deppen Manufacturing Company and endorsed by defendant as president. But one of these checks—that of John F. Hyneman—showed that it had been deposited in a bank for collection; that one had been returned because of insufficient funds. The personal checks of Wiswesser were dated February 10, 1934, April 25, 1934, May 10, 1934, and August 9, 1934. The checks of the Deppen Manufacturing Company bore dates beginning September 10, 1935, and ending November 27, 1935. The Hyneman and Hof Brau checks were dated October and November, 1935; and the Dutkin checks from May 27, 1935, to August 22, 1935. Gerhart also held six promissory notes dated September 14, 16, 17, 19 and 28 and October 30, 1935, drawn by the Deppen Manufacturing Company to the order of Gerhart for the total amount of $63,352.51, which is the amount of the total shortage, less the Hyneman and Hof Brau checks."

The evidence in the case, as we view it, was such as

258

to leave one with an open mind no reasonable doubt that the defendant knew that Gerhart was cashing these checks out of county funds—they were brought to the county treasurer's office and cashed there; that they were not intended to be presented to the bank or banks on which they were drawn for payment; that when defendant's checks and those of Deppen Manufacturing Company were drawn and cashed there was not sufficient funds in the drawer's account to meet them, and that the defendant knew this. The evidence was so convincing and overwhelming that the trial judge, in our opinion, committed no error in his charge to the jury in saying: "Without endeavoring to influence you or control you, it does not seem to me that there should be any difficulty in your minds in concluding beyond all doubt that county funds were used. But that is not sufficient to establish the guilt of Wiswesser." Then after a full review of the evidence as bearing on the defendant's knowledge that county funds were used to cash the checks, he continued: "All of those matters and many others arising out of this testimony, and all others arising out of the evidence, ladies and gentlemen, you should consider so that you may render justice in this case. Would a man of ordinary prudence, dealing with a man loaning large sums of money to him, have acted in this way? You are the judges of that, not I. But I can't help but say to you that it does not seem to me that there should be any doubt at all in finding that this man Wiswesser knew that he was using or obtaining county funds in connivance with the county treasurer......but it is for you to say, not for me."

Whether Wiswesser knew that the moneys he was getting from the county treasurer were county funds was a question of fact, the determination of which necessarily entered into and to a large extent would govern the finding of the jury as to Wiswesser's guilt or innocence; but it was a matter of fact on which the trial

judge might properly express an opinion, if warranted by the evidence, provided he left its ultimate determination to the jury: *Com. v. Orr,* 138 Pa. 276, 283, 20 A. 866; *Com. v. Cunningham,* 232 Pa. 609, 611, 81 A. 711; *Com. v. McGowan,* 189 Pa. 641, 643, 646, 42 A. 365; *Com. v. Lessner,* 274 Pa. 108, 114, 118 A. 24. The expression by the judge of his opinion on such a matter of fact is entirely different from his expressing his opinion on the *guilt* of the defendant, which operates on both law and facts (*Sampson v. Sampson,* 4 S. & R. 329, 332, 333, 336) and amounts, in practical effect, to a directed verdict of guilty, which is erroneous: *Com. v. Bloom,* 88 Pa. Superior Ct. 93; *Com. v. Orr,* supra, p. 283; *Com. v. Havrilla,* 38 Pa. Superior Ct. 292, 297. See also *Blumenthal v. Green,* 52 Pa. Superior Ct. 292, 295, 297; *Shaffner v. Com.,* 72 Pa. 60, 68. The facts in the case warranted the expression of opinion by the judge, but he was careful to leave the question to the determination of the jury.

The facts being as they were, it was wholly immaterial whether the county treasurer was accustomed to accommodate people by cashing their checks. If, in good faith and as a mere matter of accommodation, he, from time to time, cashed perfectly good checks which were collected in due course, it furnished no justification for the defendant's obtaining county money on worthless checks; if Gerhart had cashed other worthless checks for other people from county funds his illegal conduct in that respect would not excuse or condone the defendant's criminal acts. The proposed offer of proof had no bearing or relevancy on the defendant's guilt or innocence.

The indictment did not charge, and the commonwealth did not have to prove, that at the time defendant received the moneys from Gerhart he was either an agent or employee of the county or of the county treasurer. He did not have to be an agent or employee of

either *to* be guilty as charged. Nor was there any. burden on the commonwealth to prove that at the time defendant obtained county funds from Gerhart on his and the Deppen Manufacturing Company's checks, Gerhart had no earned commissions, allowances or personal funds which he could have used for delivery to the defendant. There was no evidence in the case that warranted any instructions on the subject.

Since the Act of March 31, 1860, it is not necessary to convict the principal before the accessory can be tried. And the guilt of the principal may be proved by evidence aliunde as well as by the record of the principal's conviction: *Buck v. Com.*, 107 Pa. 486, 489; *Com. v. Minnich*, 250 Pa. 363, 366, 95 A. 565; *Com. v. Smith*, 111 Pa. Superior Ct. 363, 366, 170 A. 331. As the principal in the present case had pleaded 'nolo contendere,' and judgment had not been pronounced, the record of his prosecution could not be received as evidence of his guilt: *Buck v. Com.*, supra, p. 490; but there was ample evidence aliunde, including Gerhart's own testimony, to warrant the jury in finding the guilt of the principal. The trial judge clearly instructed them that they must so find before they could render a verdict of guilty in this case.

The appellant cannot be heard to complain in this court of the affirmance of his own points as to the knowledge of the defendant that the moneys he had received from Gerhart were public moneys entrusted to the latter as county treasurer.

We come then to the second and third assignments of error. The defendant not only took the witness-stand in his own behalf, but he called character witnesses as to his reputation for "honesty and law-abidingness." He thus opened up the way for his cross-examination by the district attorney, pursuant to the Act of March 15, 1911, P. L. 20. We find no error in the time when the district attorney began his cross-examination under

the Act of 1911. Character witnesses are usually called near the close of a defendant's case; and after they are called and the defendant has finished his own testimony, the district attorney may properly reopen his cross-examination of the defendant in order that he may ask him the relevant and allowable questions which, by the Act of 1911, could not be asked until the defendant had given evidence of his own good reputation or character, etc. That was the order and course pursued in *Com. v. Dietrich*, 65 Pa. Superior Ct. 599, and *Com. v. Garanchoskie*, 251 Pa. 247, 252, 96 A. 513, and is not objectionable.

Prior to the passage of the Act of 1911, supra, the Supreme Court had ruled in *Com. v. Racco*, 225 Pa. 113, 73 A. 1067, that in order to test his credibility, a defendant who took the stand on his own behalf might be asked on cross-examination whether he had not been convicted of certain specific crimes, which were of a nature to affect his credibility or bore some relation to the crime for which he was being tried. Such cross-questioning was sometimes indulged in merely as a fishing expedition and without any basis or warrant in fact for the examination, and resulted in a prejudice in the mind of the jury against the defendant from the questions alone, irrespective of his answers. (*Com. v. Brown*, 264 Pa. 85, 91, 107 A. 676). To remedy this injustice and limit the right of such cross-examination of the defendant the Act of 1911, supra, was enacted. It is a statute intended to limit and restrain the cross-examination of the defendant, not to enlarge it. It does not rescind, expressly or by implication, other rules of evidence established for the prevention of prejudice to defendants in criminal cases. It provides, "That hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged

with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or, Two. He shall have testified at such trial against a co-defendant, charged with the same offense." As the evidence of good character offered by the defendant in a criminal prosecution must be limited to general reputation for the particular trait or traits of character involved in the commission of the crime charged (*Com. v. Colandro*, 231 Pa. 343, 355, 80 A. 571; *Com. v. Thomas*, 282 Pa. 20, 22, 127 A. 427; *Com. v. Garanchoskie*, supra, p. 252; *Com. v. Tkech*, 97 Pa. Superior Ct. 489, 490, 491; *Com. v. Cohen*, 103 Pa. Superior Ct. 496, 502, 157 A. 216; *Com. v. Stefanowicz*, 118 Pa. Superior Ct. 79, 81, 179 A. 770) and the commonwealth's cross-examination of such character witnesses is limited to the same traits, so the cross-examination of the defendant, after he has let down the bars by giving evidence tending to prove his good character, etc., as to specific offenses of which he may have been convicted, is intended to test his credibility and is limited to such offenses as may affect his credibility, viz. felonies and misdemeanors in the nature of crimen falsi (*Com. v. Quaranta*, 295 Pa. 264, 273, 145 A. 89; *Com. v. Doe*, 79 Pa. Superior Ct. 162; *Com. v. Williams*, 307 Pa. 134, 148, 160 A. 602; *Com. v. Schambers*, 110 Pa. Superior Ct. 61, 167 A. 645) and to offenses similar to that charged in the indictment. (*Com. v. Burke*, 74 Pa. Superior Ct. 320, 323 (LINN, J.); *Com. v. Dietrich*, 65 Pa. Superior Ct. 599, 602; *Com v. Garanchoskie*, supra). The Act of 1911 does not affect the right of the commonwealth to attack the credibility of a defendant

who has taken the stand in his own behalf, by producing the record of his conviction of an infamous crime, a felony or an offense in the nature of crimen falsi: *Com. v. Doe,* 79 Pa. Superior Ct. 162; *Com. v. Dorst,* 285 Pa. 232, 132 A. 168.

Even before the Act of 1911 there was no legal warrant or authority for cross-questioning a defendant as to arrests, indictments, etc. not resulting in a conviction, and the Act of 1911 does not supply it. *Com. v. Quaranta,* supra, p. 273; *Com. v. Williams,* 41 Pa. Superior Ct. 326, 341; *Com. v. Keegan,* 70 Pa. Superior Ct. 436, 439; *Com. v. Arcurio,* 92 Pa. Superior Ct. 404. We pointed out in the last named case (pp. 414-5) that the quotation from Underhill on Criminal Evidence, cited in *Com. v. Racco,* supra, and *Com. v. Doe,* supra, which approved the cross-examination of the defendant, when testifying in his own behalf, as to his previous *arrest* or *indictment* had been changed in the later (third) edition, and that the text writer now states, (sec. 387, p. 556) in conformity with the rule in force in this commonwealth *(Com. v. Quaranta,* supra), that the court should not permit a question to the witness as to whether he has ever been arrested, incarcerated or indicted.

The whole matter was gone into fully and thoroughly by the present Chief Justice in *Com. v. Quaranta,* 295 Pa. 264, pp. 271-273, 145 A. 89, and *Com. v. Williams,* 307 Pa. 134, pp. 147-150, 160 A. 602, the opinion in the latter case stating the law before the passage of the Act of March 15, 1911, P. L. 20, and the effect of that statute upon it. It is sufficient to refer to the discussion of the subject in those cases.

The learned assistant district attorney, who cross-examined the defendant after the production of his character witnesses, apparently misunderstood or misconstrued the effect to be given the Act of 1911. Instead of asking the defendant whether he had been con-

264

victed of a specific offense or offenses of a character to affect his credibility, that is, felony or misdemeanor in the nature of crimen falsi, or of a similar nature to that charged in the indictment,—the answer to which he could rebut if the defendant answered falsely—he asked the defendant: "Now during these years 1923 to 1933 [when you owned the stock of the Deppen Manufacturing Company] had you committed or been charged with or been convicted of *any* crime or offense?" Defendant's counsel immediately objected to the question as in violation of the Act of March 15, 1911, and generally incompetent, irrelevant and immaterial. The objection was overruled and an exception noted. The question was asked again and the witness pointed out that it embraced three questions. The court then took up the examination and asked, "Q. Have you committed any offense against the law?" To which defendant replied "Committed? I have been charged. I wouldn't say I had committed, because I wasn't convicted. I can't answer that question. Committed." The court went on, "Q. Will you answer that question?" "A. I cannot answer that question." "Q. Answer yes or no." "A. Yes or No? No."

The assistant district attorney then resumed the cross-examination, "Q. You haven't committed any crime or offense in the years 1923 and 1933?" "A. I don't recall of any unless in passing a red light or something like that." "Q. The years 1923 to 1933?" "A. During that period." He then called defendant's attention to his answer in an equity suit filed by Anton Loeper and Peter H. Loeper against Deppen Manufacturing Company, the defendant and others and started to read what the answer contained, when he was stopped by an objection from defendant's counsel. The court said: "I don't know that it is material. You have asked him whether he has committed a crime or offense; he says not." The assistant district attorney: "I propose

to show by his answer here that he has." Counsel for defendant objected to this remark and asked for the withdrawal of a juror. The court refused to withdraw a juror and noted an exception, but instructed the jury not to be influenced by anything that was said by the commonwealth except on the witness stand.

The initial error of the commonwealth's attorney was in erroneously drawing the conclusion that the Act of 1911 permitted him to ask the defendant in cross-examination, after the latter had given evidence of his good reputation, whether he had committed, etc. *any* crime or offense. This error, perhaps, was due to the different meanings of the word 'any', when used in affirmative[1] and negative sentences, respectively. The corresponding opposite, or affirmative, of 'not any' is not, 'any', or 'every', or 'all', but 'some'[2]; accordingly, after the defendant has given evidence of his good character or reputation, he may be cross-examined as to his conviction of some or certain specific offenses, other than the one he is being tried for, which bear upon his credibility—that is, felonies or misdemeanors in the nature of crimen falsi (See *Com. v. Schambers,* supra)—and offenses similar to that charged in the indictment, *(Com. v. Dietrich,* supra, and *Com. v. Burke,* supra).

The result of this cross-examination of the defendant

---

[1] "In affirmative sentences, *any,* being indeterminate in application, in effect has reference to every unit of the sort mentioned, and thus may be nearly equivalent to *every;* as *any* school boy would know that; *any* attempt to evade the law will be resisted": Century Dictionary.

[2] For example, if a physician orders a patient, on a strict diet, not to eat any kind of food until he has taken certain medicine, it does not imply permission to the patient, on taking the medicine, to eat *any* kind of food, but only some food from his diet list.

Again, if a medical school advertises that it will not accept any student unless he is a college graduate, it is not an offer to accept *any,* that is *every* student, who is a college graduate, but only some of them who meet its other rules and requirements.

by the commonwealth's attorney as to his having committed or been charged with *any* crime or offense from 1923 to 1933, was to bring out before the jury that he had been *charged* with having committed some unnamed offense or offenses—which was improper and irrelevant under our decisions—followed by a denial of his having committed any crime *because* he had not been convicted, and the statement of the assistant district attorney that he proposed to show by defendant's answer in another suit that he had answered the question falsely. We cannot bring ourselves to the conclusion that the errors were harmless. The evidence in the case was such that defendant's acquittal might depend on the jury's opinion of his credibility and on the effect on the jury of the testimony of his character witnesses, and he was entitled to have these matters go to the jury without any prejudicial errors on the part of the commonwealth with respect to them: *Com. v. Stefanowicz,* 118 Pa. Superior Ct. 79, 83, 179 A. 770; *Com. v. Colandro,* 231 Pa. 343, 355, 80 A. 571; *Com. v. Thomas,* 282 Pa. 20, 25, 127 A. 427.

The second and third assignments of error are sustained. The judgment is reversed and a new trial is awarded.