## Commonwealth *v.* Evancho, Appellant.

Argued October 6, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*A. H. Rosenberg,* with him *Rosenberg & Rosenberg,* for appellants.

*Albert A. Fiok,* Assistant District Attorney, with him *James F. Malone, Jr.,* District Attorney and *Leonard C. Staisey,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE ARNOLD, November 8, 1954:
The respective judgments of the Superior Court are affirmed on its unanimous opinion written by Judge WOODSIDE.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
John Revtai, prosecuting witness in this case, testified that on December 24, 1951, he carried on his person $180, all of which was taken from him by the defendants. He explained that $140 of this sum represented collections for a job of opening up a sewer that same day. Defense counsel Mr. Rosenberg, in cross-examination, asked if Revtai had kept a record of the jobs he performed and the amounts of money he received from those jobs: "Q. Do you keep a record of all the jobs you perform? A. Yes, sir. Q. You keep a record of all the income you have or the monies you receive? A. Yes. Q. And all expenses you have? A. Yes, sir. Mr. Staissey: [Assistant District Attorney] May the Court please, I think this line of questioning is wholly irrelevant. The Court: What is the purpose of it? Mr. Rosenberg: I want to know where he worked and the job he did and got a hundred and forty dollars. The Court: He says he had a hundred and forty

dollars in cash, and we will direct you to confine your cross examination to the examination achieved. You are very far afield. We want to give you every opportunity in the world, but let's stick to the case. Mr. Rosenberg: That is what I am trying to do, Your Honor. Mr. Rosenberg: Q. Can I ask this question or not, Your Honor? Q. Have you brought into court, any record showing that on this date you received this money? Mr. Staissey: May the court please, we object to that. The Court: The objection is sustained. Exception is granted."

I believe the Court was in error when it struck down defense counsel's cross-examination on a vital point in the case. At the oral argument of this cause on appeal, one or two of my brethren stated from the bench that defense counsel's question was improper because he was "fishing." Of course, he was fishing. Most cross-examination is fishing but there is nothing wrong about fishing for the truth. And a certain latitude must be allowed the fisherman unless his piscatorial questing extends into streams and pools which are so remote in time, distance, and relevancy from the issue involved as to make the inquiry wholly foreign. There was no such fishing remoteness in Mr. Rosenberg's question. As a matter of fact defense counsel was practically fishing in a barrel. Another question or two along the line he was pursuing would have brought to the surface information that could only have been helpful to the jury in reaching a verdict based on discovered facts. Whether Revtai actually had $180 with him on the day of the robbery touched the very kernel of the controversy. If it could be shown that he did not actually receive that day the $140 he testified to, such a disclosure would indubitably have struck a shattering blow to the verisimilitude of his story. On the other hand, if he did have the questioned record,

this fact would have added an additional luster of authenticity to his account of the crime.

The presence or absence of the record was not evidence which of itself would determine guilt or innocence of the defendants, but it was so much a part of the picture of the asserted crime that if the cross-examination dimmed or cut away that portion of the picture the mutilated remainder might well cast doubt on the entire prosecutor's case. If an alleged victim asserts that the money stolen from him was carried in the hip pocket of his trousers and it develops in cross-examination that he never had a hip pocket to his trousers, this revelation would not necessarily prove that the money was not stolen; he could have been carrying it in the side pocket of his coat. But in such a case a juror could not be criticized for entertaining thoughts as to whether the witness was as inaccurate in the rest of his story as he was with regard to the depository of his money. It often happens that only by cross-examination on corollary matters that a main falsehood can be detected. The person who intends to falsify on a main proposition will resolutely fortify himself on that particular proposition, but the truth may escape from his lips when the cross-examiner attacks from an unexpected, if subsidiary, quarter.

In my judgment it is serious error, especially in criminal cases, to unduly curtail cross-examination. In the whole history of Anglo-American jurisprudence no feature of trial procedure has been more jealously guarded than the right of cross-examination. It is through the cross-examiner's relentless probing and searching that falsity in the accusatory narrative may be uncovered. The main story may remain unshaken, but the upholding proofs may be so riddled, battered and discredited that the principal accusation will fold and fall simply because of the lack of adjacent support.

If the prosecuting witness identifies the defendant because he says he saw him on the night of the robbery by the light of the moon, and then the defense counsel is not permitted to ask what kind of a moon it was, how strong was the light of that moon, what shadows were created by the beams of that moon, and any other question bearing on the illuminative powers of the moon that particular night so as to test the reliability of the witness's recollection, as well as the accuracy of his vision and his powers of detection, cross-examination becomes a bladeless sword and a stringless bow. To restrict cross-examination to a question or two is in effect to deny the right of cross-examination.

Professor John Henry Wigmore has properly said that cross-examination "is beyond any doubt the greatest legal engine ever invented for the discovery of the truth." Also: "For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony *unless it has been probed and sublimated by that test,* has found increasing strength in lengthening experience." (Emphasis supplied.)*

Before cross-examination is summarily shut off, especially in a trial involving a man's liberty, the trial judge should determine what possible mischief could result from a reasonable continuation of the cross-examination then in progress. If Revtai was as truthful as Diogenes about the money he earned on December 24, 1951, no harm could have befallen the Common-

---

* Wigmore on Evidence, Vol. V, Third Ed., Sec. 1367.

wealth's case by his being required to answer whether he had brought into court his records of that money earned. On the other hand, if Ananias and not Diogenes inspired his answers, it is a matter for great regret that the Court closed the door through which Mr. Rosenberg might have dragged the truth from the accusing and dooming witness.

During the trial the Assistant District Attorney introduced into evidence the record of several prior convictions of John Fela, stating that the records were produced for the purpose of attacking Fela's credibility. When defense counsel objected, the Court overruled the objection and properly stated that the records were accepted "solely for the purpose of attacking the credibility of the one witness, John Fela." However, when the Trial Judge charged the jury he was completely silent on the subject of the prior convictions. This silence unquestionably allowed the jury to believe that the prior convictions constituted in themselves substantive evidence which persuasively argued that if the defendant committed crimes in the past he probably committed this particular crime too. To allow such a finding is of course contrary to our whole system of trial by jury which aims to keep the jury's mind concentrated on one case at a time.

The Trial Judge admitted that his failure to call to the jury's attention, in his charge, the purpose of the introduced records, "was an oversight." That is to say, he intended to mention this matter but he forgot. It was an oversight. But he says that the lawyer was responsible in not calling it to his (the Judge's) attention. He states that at the conclusion of his charge he asked counsel if there was "any request for additional charge or corrections in the charge." Defense counsel made no request for a specific charge on this point. But on a matter so basic as this, the de-

fense counsel's failure to ask for what the defendant was entitled to should not prejudice the rights of the defendant. If the Judge can find an excuse for his oversight, why does he hold the lawyer responsible to a greater degree than he holds himself for what, after all, was his fault? As I view it, a judge is simply being tenacious when he says in effect to the lawyer: "Well, I asked you if I forgot anything and you said nothing. You can't, therefore, hold me responsible for forgetting what you forgot to recall to me what I forgot in the first place."

The Trial Judge here says further, in additional extenuation of his failure to charge on this matter, that at the time of the introduction of the records he "very carefully instructed the jury as to the manner and effect of their introduction." The trial transcript shows that the Trial Judge used exactly 14 words in announcing that the records were to be introduced "solely for the purpose of attacking the credibility of the one witness, John Fela." This may seem like "very careful instruction" to the Trial Judge, but to me it sounds rather casual. Nor is there any indication that this "instruction" was actually spoken to the jury. Usually a stereotyped phrase of this kind is mumbled in a low mechanical tone of voice without any effort made to let the jury know that it is intended for their special consideration.

I was a nisi prius judge for 20 years and from those two decades of courtroom experience (added to the years I spent as trial counsel), I have come to the conclusion that what is procedurally and technically stated *en passant* in the midst of a trial makes very little impression on the jury. How many non-experienced members of a jury know what is meant by "attacking the credibility"? Unless credibility is defined and its application made clear, the word to the unex-

perienced juror may stand for character, honesty, re-liability. Dropped in the mid-stream of a trial without emphasis or elucidation the average juror accepts it as part of the technical abracadabra of a trial which he is not supposed to understand anyway. But the records of the defendant's former convictions are not hard to understand. The trial district attorney stands before the jury and very clearly reads out aloud that the defendant on a certain date committed one crime, that on another date the defendant committed another crime, and that on still another date this same defendant committed a third crime, and so on and on. In this case the Assistant District Attorney read from six different indictments. All this meant but one thing to the jury and that is that the defendant was a pretty bad man. And if he committed six crimes in the past he probably committed this present one also. All this business, of course, is opposed to every principle of justice and contrary to the law which is intended to be the handmaiden of justice. A defendant may indeed have committed six crimes in the past and yet be innocent of this one. It is the duty of the Trial Judge to explain to the jury in words that the jury understands that the purpose of the prior convictions is to show that since the defendant lied on previous occasions (evidenced by the fact that he was convicted) his words of denial today are to be weighed and scrutinized carefully, but that the prior convictions are not to be regarded as evidence of present guilt. The Trial Judge has indicated that the jury was entitled to an instruction of that kind but that he forgot to give the instruction. It was an oversight.

After admitting his oversight the Trial Judge stated that in point of law there was still no error because the cases of *Commonwealth v. John Doe, Alias Ross,* 79 Pa. Superior Ct. 162; *Commonwealth v. Williams,*

307 Pa. 134 and *Commonwealth v. DePofi*, 362 Pa. 229, are authority for the correctness of what was done at this trial. But an examination of these cases shows that they offer no support to the thesis of the lower court. The *Williams* case and the *DePofi* case were murder cases and therefore, not at all apposite to the case at bar. The records of prior convictions were there offered to assist the jury in deciding whether the penalty should be death or life imprisonment. The *Doe, Alias Ross* case states affirmatively that prior convictions may be introduced for attacking credibility but it does not say that the judge may, with impunity, fail to charge the jury on so important a matter.

The lower court adds that the defendants "were tried by an intelligent jury" and that "their verdict shows a courageous and commendable discharge of an unpleasant duty." The jurors were undoubtedly intelligent and courageous but if they were given incorrect instructions or if the instructions failed to put them on the right path for the faithful discharge of their duty, their verdict could still fail to reflect truth and justice. The most honest man in the world can still fall over a cliff in the dark if he is not provided with a lantern and not directed as to the proper path to follow in reaching the fair, honest and just destination he seeks.

I regard the two errors committed by the court below of sufficient gravity to vitiate the trial as we understand trials in the good Anglo-American traditions and I accordingly dissent from the decision of the Majority which affirms the decision of the lower court.